L. R. PEARCE, Respondent, v. E. J. HANLON, S. R. Okes and Day Okes, copartners as Hanlon & Okes, Appellants.

(233 N. W. 840.)

Opinion filed December 22, 1930.

*Robert H. Bosard,* for appellants.

*F. J. Funke,* for respondent.

BIRDZELL, J. The plaintiff brought action against the defendants for personal injuries alleged to have been sustained by him in a collision with a gravel truck driven by an employee of the defendants. The plaintiff had judgment in the trial court, the defendants moved for a new trial, and this appeal is taken from the judgment and from the order denying the motion for a new trial. The facts may be briefly stated as follows:

The defendants were paving contractors conducting paving operations in the city of Minot in May, 1928. They employed one C. K. Bigelow to drive a large truck used for hauling gravel. The plaintiff was an employee of the Owl Messenger Service in the city of Minot who used a motorcycle with a side car in the performance of his duties. On the afternoon of the 31st of May, 1928, Bigelow was proceeding south on Second Street Southwest with a load of gravel. Shortly before reaching the intersection of Third Avenue Southwest with Second Street Southwest, near which intersection the collision occurred, Bigelow passed a Ford touring car on the left-hand side of such car. The evidence is in dispute as to whether the touring car had pulled near enough to the curb on the right side of the street to permit the truck to pass without going to the left of the center line of the street. The plaintiff mounted his motorcycle in front of the office of his employer situated on Third avenue about 25 or 30 feet east of the corner of Third avenue and Second street, started his machine, drove west to the corner and turned to the right or north on Second street, where he collided with the defendants' truck. The impact rendered him unconscious and occasioned the injuries for which damages are sought in this action. There is a conflict of evidence concerning many of the details of the collision, such as the place in the street where it occurred, whether at the time it happened Bigelow was swinging the truck to the left to pass the touring car and to make a left turn on to Third avenue, or was swinging it to the right to avoid the collision, the speed at which the truck was traveling, the speed at which the motorcycle was traveling, et cetera. In so far as these conflicts are material to the questions presented on the appeal, they will be again referred to.

There are several assignments of error predicated on rulings upon the admission or rejection of evidence. The first ruling complained of is as follows: The witness Bigelow was asked "What, if anything, did the driver of that car do after you passed Western avenue (the car referred to being the Ford touring car spoken of above)? Answer. He pulled in close to the curb and gave me a chance to go by him." The plaintiff's attorney moved that the latter part be stricken out and it was stricken out. In the examination immediately following this ruling, however, the witness was permitted to state that the driver of the Ford car had pulled in within two or three feet of the curb on the right-hand side of the street. He testified: "Question. How close to the curb did he pull in? Answer. Within a couple or three feet of the curb. Question. And what did you do then? Answer. I passed him on the left, I swung to his left. Question. In passing him at that particular point, about what position were you on, on Second street? Answer. Well, when I was right about even with him I was just about—my left hind wheel was about the center of the street." Thus, the ruling of the court in no way hampered the defendants in bringing out this witness' version of the facts concerning the operation of the Ford car and the manner in which the defendants' employee operated the truck in passing it. The next ruling complained of is in the testimony of the same witness as follows: "Question. And then going down Second street, what rate of speed were you driving? Answer. I never went over twenty miles an hour." This was objected to as calling for a conclusion. There was a motion to strike it as not responsive, which was granted. The immediately following question and answer are: "Question. At the time you started to pass this touring car what rate of speed were you going? Answer. Twenty miles." And it was further developed that he continued to go at that rate of speed until he applied the brakes just before the collision. There is clearly no merit in this assignment.

Error is predicated upon the following ruling: "Question. Would it have been possible for a few men to have pushed that loaded truck, as it was, from the east side of the street over to the west side of it?" Objection was sustained to the question. There had been some testimony on behalf of the plaintiff to the effect that almost immediately after the accident the truck was moved from a point to the left of the

center of the street to a place on the right-hand side of the street by being pushed. The question was clearly improper and open to the objections that were made. But nevertheless Bigelow was permitted to testify that it would take eight men to push the empty truck on the level; whereas, this truck at the time of the accident was loaded with at least four yards of gravel. There is no indication in the rulings of the court that Bigelow was at all hampered in stating the amount of man power it would have required to move the truck and to thus discredit the testimony offered by the plaintiff.

Error is predicated on the following ruling: The chief of police, a witness for the defendants, was asked "Did you make inquiry there at the place where this accident took place, as to who was there and saw the accident? Answer. Yes, sir. Question. Did anyone advise you they were there? Mr. Funke: We object to that as calling for a conclusion of the witness and hearsay testimony. The court: Sustained. (By the Court) How many people did you inquire of as to whether they might be witnesses? Answer. Two. Question. You didn't ask any others? Answer. I asked the crowd if any one had seen it. (By the Court) They were standing near you? Answer. Yes. (By the Court) Did anybody across the street tell you they had seen the accident, did you ask them? Answer. I asked in a loud tone of voice if they had seen the accident. (By the Court) You didn't go to each individual? Answer. No, sir." It clearly appears that all of the facts, concerning the inquiries this witness made for persons who had seen the accident and the responses to such inquiries, were fully brought out. Hence, there was no possible prejudice in the ruling.

It is next contended that there were irregularities in the proceedings due to the action of the court by which the defendants were prevented from having a fair trial. This contention is based on the action of the court in participating in the examination of witnesses and, at the close of the trial, in issuing a bench warrant for the arrest of the defendants' principal witness Bigelow on a charge of perjury. The record fails to show any undue participation by the court in the examination of witnesses, nor does it indicate that the court manifested any leaning towards either of the parties. The questions were such as were fairly calculated to elicit the facts and make the testimony more def-

inite. This practice, properly guarded, is not to be condemned. State v. Hazlett, 14 N. D. 490, 105 N. W. 617. The record does not show that any proceedings looking toward the arrest of Bigelow on the perjury charge were had in the presence of the jury, or that the jury was made aware of the fact that the court thought there was sufficient basis for a perjury charge on account of the testimony he had given. Hence, there is no merit in this contention.

One of the grounds for the motion for a new trial was newly discovered evidence. This is supported by an affidavit from the defendants' superintendent who was in Minot at the time of the accident and who made measurements immediately thereafter. He was not called as a witness because the defendants' attorney did not know these facts. It appears that when the defendants sought counsel the truck driver, rather than the superintendent, had been sent to advise him concerning the facts and had omitted to state, if he knew, that the superintendent had made measurements. Aside from the fact that there was ample evidence offered on behalf of the defendants as to every detail concerning the location of the truck and the distance the wheels had skidded when the brakes were applied, as indicated by the marks upon the pavement, there is not here a sufficient showing of diligence to permit this evidence to be regarded as newly discovered.

The final contention is that the evidence is insufficient to support the verdict. There can be no merit in this contention in view of the concession of counsel that various witnesses for the plaintiff testified to excessive rate of speed as to the truck, that the plaintiff was going at a moderate rate of speed, that the motorcycle was in first gear, that he was on the right-hand side of the street, whereas the truck was to the left of the center of the street and had swung out from behind a Ford car, thus giving the plaintiff little or no opportunity to avoid the collision. There being a direct conflict of testimony concerning these matters, the case was clearly one for the jury. Finding no prejudicial error in the record, the judgment and order appealed from must be affirmed. It is so ordered.

BURKE, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.