Estelle A. GEIER, for the use and benefit of herself and Victoria Geier, Becky Ann Geier and Edde-Jo Geier, Plaintiff and Respondent,

v.

Lester TJADEN and Interstate Transportation Company, a Corporation, Defendants and Appellants.

No. 7457.

Supreme Court of North Dakota.

Dec. 5, 1955.

Hyland, Foster & Conmy, Bismarck, for appellants.

Lord, Ulmer & Murphy, Mandan, for respondents.

BURKE, Chief Justice.

This is an action for wrongful death. In her complaint plaintiff alleged that her husband received injuries, which caused his death, in a collision between a motor bus owned by the defendant, Interstate Transportation Co., and driven by the defendant, Tjaden; that her husband's injuries and death were proximately caused by the negligence of the defendant, Tjaden, acting in the course of his employment with the defendant transportation company.

In their separate answers, the defendants denied that there was any negligence on

the part of the defendant, Tjaden and alleged that plaintiff's husband's injuries and death were caused by his own negligence.

The issues in the case were tried to a jury which returned a verdict in favor of the plaintiff in the total sum of $55,502.03. Judgment was entered pursuant to the verdict. Defendant has appealed from the judgment and from an order denying a motion for judgment notwithstanding the verdict or in the alternative for a new trial. There are 46 specifications of error.

We shall first consider the specification that the evidence is insufficient to sustain the verdict. Under this specification defendants assert that there is no proof of any negligence on the part of the defendant, Tjaden, that there is no proof that plaintiff's husband died as a result of injuries received in the collision and that the evidence with respect to damages will not sustain a verdict and judgment in the amount found and rendered.

On October 2, 1952, plaintiff's husband, Eddie Geier, in company of a group of people, in three cars, drove from Mandan to Minot for a religious meeting. The cars were owned by a Mr. Ellsworth, a Mr. Phillips and Lieutenant Tollerud of the Salvation Army. They left Minot on the return trip a little after 10 o'clock that evening. At a point about a mile and a half north of Bismarck, the car driven by Mr. Phillips ran out of gasoline. The three cars stopped at the side of the road and it was decided that Lt. Tollerud should go to town for gasoline. There is a direct conflict in the testimony as to the position of the parked cars upon the highway. Plaintiff's witnesses testified they were parked entirely upon the shoulder of the highway and that there was at least 18 inches clearance between the outer edge of the surfaced portion of the highway and the bodies of the cars. Defendants' witnesses testified that the parked cars extended about three feet over the surfaced portion of the highway which was 23 ft. wide.

The defendant, Tjaden, driving a passenger bus upon a regularly scheduled trip for the defendant transportation company, left Minot at about 11 o'clock p. m. His destination was Bismarck. He drove at a speed of about 50 miles per hour and at about 1 o'clock a. m. had reached a point about 2 miles north of Bismarck. According to Tjaden's testimony, as he came over a slight elevation in the highway, he noticed the white lights of a car approaching from the south and saw red lights of a southbound vehicle. As the car approached from the south its bright lights blinded him to the extent that he could no longer see the red light upon the car ahead of him. He reduced his speed to 45 miles per hour. As the northbound car passed him, he again saw the red lights, but at that time they were immediately ahead of him and there no longer remained sufficient space to turn out and avoid a collision. The right front end of the bus struck the left rear of the Ellsworth car in which plaintiff's husband was sitting. Plaintiff's husband received serious injuries the treatment of which required surgery. He died ten days after the operation. The immediate cause of death was a pulmonary embolism.

■■ In considering the question of the sufficiency of the evidence to sustain a verdict, we must take that view of the evidence most favorable to the successful party. Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873. Questions of negligence and probable cause are ordinarily questions of fact for the jury. They become questions of law only when the state of the record is such that reasonable men can draw but one conclusion therefrom. Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Fagerlund v. Jensen, 74 N.D. 766, 24 N.W.2d 816.

We must assume therefore that the defendant, Tjaden, as he was nearing Bismarck, saw the rear light of a vehicle about 300 to 450 feet ahead of him; that at the same time he saw the bright lights of an approaching car, that the glare from the bright lights obscured his view of the red light which he had seen, that he took his foot off the accelerator and slowed down from 50 to 45 miles per hour; that after the glaring lights had passed, he saw the car in which plaintiff's husband was sitting

too late to avoid a collision although that car was parked entirely off of the surfaced portion of the highway and there were no other vehicles in the vicinity which restricted his opportunity to use the entire surfaced portion of the highway in passing.

■ The negligence alleged is that the defendant Tjaden drove at a speed which was unreasonable in the circumstances without maintaining proper lookout and control. Tjaden knew there was a vehicle on the highway, 300 to 450 ahead of him, knowing this he made no attempt to reduce his speed below 45 miles per hour when his view of the rear light of that vehicle was obscured by the glare of approaching lights. He did not stay on the surfaced portion of the highway although there was no reason for not doing so, but drove with his right wheels at least two feet out on the shoulder of the road. Whether this conduct shows an absence of reasonable care in guarding against a potential danger which he knew lay ahead of him or a failure to keep his vehicle under proper control are questions upon which reasonable men could at least disagree. The evidence is therefore sufficient to sustain a finding of negligence.

■ The physician who attended plaintiff's decedent testified that in his opinion his death was directly caused by his injuries. It is clear therefore that the evidence is sufficient to support a verdict for the plaintiff. We shall consider the specification that it is insufficient to support a verdict in the amount found in connection with the assignment that it was error for the trial judge to refuse a request that the jury be instructed that their award of damages for future loss should be limited to the present cash value thereof.

The requested instruction was as follows:

"You are instructed that damages, if any, are awarded for pecuniary loss to the wife and children arising out of what the deceased might reasonably have been expected to contribute to the support of such wife and chil-

dren, then such damages should be measured by the present cash value thereof."

■ This requested instruction states the correct rule. Corpus Juris states the rule as follows:

"The sum recoverable is not an amount equal to the total pecuniary benefits lost but it is limited to the present cash value thereof." 25 C.J.S., Death, § 101, p. 1246.

American Jurisprudence states:

"By the great weight of authority, where the damages to be awarded for wrongfully causing the death of a person are compensation to designated relatives for their pecuniary loss, both immediate and prospective, so far as the loss is prospective, the gross amount thereof should be reduced to its present worth." 16 Am.Jur. (Death, Sec. 202) 138.

■ The practical applicability of this rule to the instant case is made very apparent by the fact that the deceased's life expectancy at the time of his death was more than 40 years. Thus the gross amount of the prospective damages invested at $2\frac{1}{2}\%$ would provide an annual income equal to the annual loss without ever encroaching upon the principal. It is clear that an award in such an amount would be excessive. It follows that the refusal to give the requested instruction was error. Was this error prejudicial to the defendants?

The record discloses that the deceased enlisted in the U. S. Navy on July 21, 1943, when he was 17 years of age. At the time of his separation from the service in January 1946 he held a temporary rating of Gunner's Mate 3c. In January 1947, he enlisted in the U. S. Army with the grade of corporal. He was discharged as corporal in January 1950. His army separation qualification record shows that for 12 months of his service he was a truck driver, for 6 months a rigger and for 18

months a special vehicle operator. A special vehicle operator "operates large semi-trailer, trailer trucks, wrecking equipment, refueling units, diesel powered towing equipment and other special purpose vehicles used in connection with construction, salvage or transportation activities, and operates special equipment with which vehicle is outfitted." The deceased was married while he was in the army on September 2, 1947. After his discharge from the army he and his wife visited for about a month in Mandan, N. D. Then they went to the wife's home where they visited for an unstated period of time. After this visit they returned to Mandan. They later moved to Minneapolis where the deceased entered a government refrigeration school. He left school because his allowance was not enough to support him and his wife and one child. He then took employment with a steel company. In this employment which lasted about a year he earned from $60 to $75 a week. He left this employment because of the danger involved, and went to work for Western Alloy Casting Company at $50 to $65 a week. He returned to Mandan in July 1952, and took a job as a filling station attendant at "about $200 a month". At the time time of his death in October 1952 he was working as a bricklayer's helper at "about $60 a week". He never had employment as a heavy equipment operator after his discharge from the army although his wife testified, without objection, that he had registered with the North Dakota Employment Service for employment in that capacity. The Geiers had acquired no property of any kind during their five years of married life. They had two children at the time of Edward Geier's death and a third child was born in January 1953. Mrs. Geier testified that her husband neither drank intoxicating liquors nor smoked and that he devoted all his income to family purposes. In his argument to the jury counsel for plaintiff asked the jury to multiply the deceased's average annual earnings by the number of his years of life expectancy in assessing damages for prospective loss. Counsel for defendants argued that the award of damages should be limited to present value. With respect to prospective loss the trial judge charged, "The widow and children of deceased may recover for aid, support and benefits which deceased was obligated to furnish, or which they were receiving, or which they had any reasonable expectancy of receiving from him during his lifetime." The verdict of the jury was for special damages in the sum of $1,934.03 and general damages in the sum of $53,568.

Counsel for plaintiff argues that in view of the size of the verdict this court cannot say that the jury did not make its award upon the basis of the present value of prospective damages in accordance with the argument of defendants' counsel and that consequently the failure to give the requested instruction was not prejudicial even though error. He cites the case of Umphrey v. Deery, 78 N.D. 211, 48 N.W.2d 897, in support of this contention. In that case we said, 48 N.W.2d 914:

"It is true that no such instruction was given but the instructions given did not 'inhibit or negative computation of damages on the basis of present worth' * * * and it has been said that in such case the court 'cannot assume that the jury did not, in fact, so reach its determination'. Ingebretsen v. Minneapolis & St. L. R. Co., 176 Iowa 74, 155 N.W. 327, 332".

While the foregoing statement was clearly obiter it suggests an approval of the Iowa decision.

■ There is no question but that the award of damages, in this case, is supported by the evidence when subjected to the present value test. The evidence is that deceased's earnings varied from $200 a month to $75 a week. The jury could well have found that his earnings had been an average of $60 a week. The evidence is that the deceased was a man of exemplary habits who devoted all of his income to family purposes. The jury could have found that the family benefited to the extent of two-thirds of his income or $40 a week. The present value of $40 a

week for 40 years at 2½% is $52,840, at 3% is $48,760 and at 4% is $41,760. Thus the prospective money damages alone, without taking into consideration any future increase in earnings which the deceased might reasonably have been expected to obtain, almost equals the amount of the verdict tested upon a present value basis. The difference even when the computation is made upon a 4% discount basis does not constitute an excessive award for other elements of damages such as the loss of the care and protection of a husband and father, his counsel and advice and other intangibles, the award for which must be left largely with the discretion of the jury. See Dahl v. North American Creameries, N.D., 61 N.W.2d 916. Upon the evidence, we consider the verdict reasonable. Although there are decisions to the contrary we think the better rule of law is that, where the verdict is reasonable under the evidence when tested on the basis of present value and where the instructions do not preclude an award on a present value basis, the trial court's failure to instruct the jury to limit recovery for prospective damages to their present worth is not prejudicial error. Dierks Lumber & Coal Co. v. Tollett, 178 Ark. 199, 10 S.W.2d 5; Louisville & N. R. Co. v. Asher's Adm'r, 178 Ky. 67, 198 S.W. 548, L.R.A.1918B, 211; Swauger v. People's Natural Gas Co., 251 Pa. 287, 96 A. 712.

The next specifications of error to be considered are that the trial judge refused to give requested instructions 2, 3 and 4. These instructions all relate to defendant Tjaden's testimony that he was temporarily blinded by bright lights.

Requested instruction 4 read:

"You are instructed that temporary blinding caused by bright lights of an oncoming or parked vehicle has been recognized as a legally sufficient excuse for failing to stop within the assured clear distance ahead and if you find, from the evidence in this case, that defendant driver was temporarily blinded by bright lights of an oncoming vehicle, then that is a legally sufficient excuse for his not stopping within the assured clear distance ahead."

■ In support of this request defendant cites the case of Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761. In that case, we sustained a verdict of a jury, saying that where a plaintiff was temporarily blinded by bright lights, reasonable men could disagree upon whether her failure to stop within the assured clear distance ahead was contributory negligence and therefore the question was one for the jury. We did not say that temporary blinding by bright lights was a legally sufficient excuse for not stopping. The jury had before them the evidence and the usual instructions and it was for them to say in view of all the circumstances, including the bright lights, whether the defendant driver's conduct stood the test of ordinary prudence. The refusal to give these requested instructions was not error.

We will next consider the specification that the trial judge erred in instructing the jury:

"The Jury may also consider the possibility that Edward Geier might be able to better his position with continued service in the construction business."

Counsel for defendant states that this instruction opens for the jury a field of speculation and conjecture. However, in telling the jury what damages might be awarded the trial judge stated: "You may consider the probable future earning capacity of the deceased * * *. The widow and children may recover benefits * * * which they had any reasonable expectancy of receiving during his lifetime. You are not permitted to award speculative damages, by which term is meant compensation for prospective detriment, which, although possible, is remote, conjectural or speculative."

■ When the instructions are considered as a whole it appears that defendants were fully protected against an award of speculative damages.

368

The next specifications to be considered are those relating to the evidence of deceased's qualifications for employment at a higher rate of income than he had been receiving prior to his death and to the opportunities for such employment.

 The deceased's "Army Separation Qualification Record", showing that deceased was a qualified operator of special heavy equipment with 18 months experience was received in evidence over the objection that it was immaterial. There was no objection to the foundation. The admission of this record was not error.

 "Evidence is competent to show the earnings of decedent in an occupation different from, and more remunerative than, the occupation in which he was engaged at the time of his death, or that he was skilled in trades other than the one in which he was engaged at the time of his death; * * *." 25 C.J.S., Death, § 123, p. 1293.

A construction contractor who testified on behalf of the plaintiff testified that in 1953, the year following deceased's death, heavy equipment operators, who had the qualifications shown by deceased's army record, were in demand and the wages paid such operators were from $500 to $600 per month. This testimony was received over the objection that it went "into the field of guess work and speculation so far as" the deceased's earnings were concerned. The testimony was properly admitted. If it is proper to admit testimony as to skill at other trades it follows that testimony as to opportunity for employment at those trades and the wages paid therein is admissible so that the jury may determine whether the deceased had reasonable certainty of bettering his employment and to what extent it would be bettered. This testimony tends to remove evidence of skills from the field of speculation. Certainly evidence of skill alone without any evidence of opportunity for employment of the skill, or the wages it would earn, would leave the jury in a position where they could only speculate upon the question of betterment.

Defendant also specified that it was error for the trial court to take judicial notice of the mortality table published in 58 C.J.S., p. 1212. Section 31-0805, NDRC 1943, provides:

"In all cases in which probable duration of the natural life of any person from and after a particular age is material, standard statistical tables of mortality are competent evidence of such probable duration or expectation of life."

 It is customary and proper for such tables to become a part of the evidence in a case by way of judicial notice. 31 C.J.S., Evidence, § 98, p. 698; 20 Am. Jur. 113. Defendants' objection is not that the court took judicial notice of a mortality table but that judicial notice was taken of a table that was not standard. Whether the table was a standard mortality table was a question for the trial judge. He determined that the table was a standard table and there is nothing in the record to show that it was not. This specification is therefore not sustained.

Another specification is that the trial court erred in excluding certain opinion evidence defendants sought to elicit from Mr. Harty, the president of the defendant corporation. He was asked for an opinion as to whether a bus could be driven with its right wheels on the graveled shoulder of the highway and its left wheels on the portion of the highway that was surfaced with blacktop. The question was prefaced with the statement:

"Basing your testimony upon all the facts as claimed to have been in existence there by plaintiff's witnesses".

 The question was objected to upon the grounds that there was no foundation laid and that it called for a conclusion of the witness. The objection to the foundation was properly sustained as there is nothing in the record to show that the witness heard or knew what the witnesses

for the plaintiff claimed the facts to be. Further the testimony is that the witness was an executive officer, that he had not driven a bus for three years and that there is no testimony that he had ever driven a bus of the type involved in this action. There is therefore no merit in this specification.

■■ We next consider the specification that defendants' cross-examination of the physician who testified as to the cause of decedent's death was unduly limited. The autopsy established that death had been caused by a pulmonary embolism. The physician had testified that in his opinion death had resulted from the injuries suffered by the decedent. The record also showed that decedent's injuries were such that an operation was imperative in their treatment. Defendants attempted to establish by cross-examination of this physician that the pulmonary embolism might have been the result of the operation rather than of the original injuries. Objections that the questions were immaterial were sustained. The sustaining of the objections was not error. In so far as defendants' liability is concerned, whether the original injury or the operation caused the embolism is of no importance for in either case the causal chain reaches back to the defendant Tjaden's negligence. Necessary surgical treatment of an injury proximately caused by a defendant's negligence, even though it be the immediate cause of death is not an independent intervening cause which will relieve the defendant of liability. 25 C.J.S., Death, § 25, p. 1094; 16

Am.Jur. (Death, Sec. 79) 59; Horney v. St. Louis & Northeastern Railway Company, 165 Ill.App. 547; Blackwell v. American Film Co., 189 Cal. 689, 209 P. 999.

■ There are other specifications that the exclusion of testimony offered by the defendants was error. In the case of each we have examined the record and have found that the exclusions were only temporary in nature for in each case the witnesses had previously or subsequently stated the facts sought to be elicited. Pearce v. Hanlon, 60 N.D. 231, 233 N.W. 840.

The specification as to the excessiveness of the verdict is eliminated by our consideration, earlier in this opinion, of the reasonableness of the verdict. We have found that the verdict was reasonable under the evidence.

■ We have also considered the specifications as to the alleged prejudicial arguments of counsel for the plaintiff. Upon the whole record we are satisfied that these arguments, even if of doubtful propriety, did not affect the verdict prejudicially or deprive the defendants of a fair trial. In such cases the verdict will not be disturbed. Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282.

Since we have found no prejudicial error in the case, the judgment of the trial court is affirmed.

MORRIS, SATHRE, JOHNSON and GRIMSON, JJ., concur.