Florence BENTSEN, for the Use and Benefit of herself and Dennis Bentsen, Juanita Bentsen, and Sterling Bentsen, Minors, Plaintiff and Respondent,

v.

Ardmore QUAMME, Defendant and Appellant.

No. 7696.

Supreme Court of North Dakota.

Oct. 18, 1957.

Leslie R. Burgum, Atty. Gen., Frank J. Kosanda, Asst. Atty. Gen., for appellant.

Robert Wallin, Hettinger, for respondent.

GRIMSON, Chief Justice.

This is an action for damages resulting from the death of Arthur Bentsen because of injuries claimed to have been negligently inflicted upon him by the defendant, brought under Chapter 32–21, NDRC 1943. The plaintiff is his widow bringing the action for herself and her three minor children. The defendant denies all negligence and claims contributory negligence by the decedent, Arthur Bentsen.

At the close of the evidence the defendant made a motion to dismiss on the grounds that no negligence was shown against him but that there was contributory negligence as a matter of law shown on the part of the decedent, Arthur Bentsen. The plaintiff also made a motion for directed verdict in favor of plaintiff on the grounds that the defendant, Quamme, was shown to have been negligent and that no contributory negligence was shown on the part of the decedent. Both motions were resisted and denied. The jury found for the plaintiff in the sum of $2,001.77.

The defendant after the verdict was rendered duly made a motion for judgment notwithstanding the verdict. That motion

was denied and appeal is taken from the order denying that motion. The same errors are alleged that were assigned on the motion for a directed verdict for the defendant.

■ The question of negligence and contributory negligence are ordinarily questions of fact for the jury. So are any questions of a difference of opinion as to the inference which might fairly be drawn from the considered facts. Only when reasonable men can draw but one conclusion from the evidence do they become questions of law. Killmer v. Duchscherer, N.D., 72 N.W.2d 650, 655; Geier v. Tjaden, N.D., 74 N.W.2d 361, 364; Dahl v. North American Creameries, Inc., N.D., 61 N.W.2d 916, 920; Froh v. Hein, 76 N.D. 701, 705, 39 N.W.2d 11; Moe v. Kettwig, N.D., 68 N.W.2d 853, 859.

■ The evidence shows that on the afternoon of Sept. 27, 1955, Arthur Bentsen had accidently driven his automobile into a highway ditch and having failed to get it out of the ditch, even with help, he had gone to Bucyrus to look for a ride home. He found his neighbors, Mr. and Mrs. Norman Davidson, who promised him a ride home. They then went to the LeRoy Gran residence in Bucyrus for a short visit. On leaving there, Mr. Davidson was unable to start his car so he asked LeRoy Gran to help him. Gran did so and with his own car pushed Davidson's car up Main street in Bucyrus, across the railroad tracks and across Highway No. 12, going on north on a graveled county road about two-tenths of a mile from U. S. Highway No. 12. It was decided then that the Davidson car was out of gas. That car was parked on the east side of the road as close to the ditch as possible. Mr. Gran then went north to a farm home and returned with a five gallon can of gasoline. He continued south on the west side of the road, about three car lengths, as he claims, past the Davidson car and stopped as far as he could on the west shoulder of the road. Mr. Gran testified that he left sufficient space between the

cars for other cars to pass through, and that he left his lights on.

Davidson and Gran then proceeded to put gasoline into the tank at the left, rear of the Davidson car. Mrs. Davidson and her son, Byron, helped them. The decedent, Arthur Bentsen, stood by. While so doing they saw an automobile come across Highway No. 12, and proceed north on the county road on which the cars were parked. That was the car the defendant was driving. After crossing the highway the defendant increased his speed. The road was dry. When Mr. Davidson saw the defendant coming at increasing speed he sent his wife and son to flag defendant down. Defendant did not notice them. He finally saw the two rear lights of the Davidson car and claims he started to turn his car to the west lane of the road so as to pass the Davidson car. No brakes were applied. There is a dispute in the testimony as to whether the lights were on or off on the Gran car and how far south of the Davidson car it was parked. However, when the defendant at last noticed the Gran car on the west side of the road he turned back into the east lane but was unable to stop. He drove into the rear of the Davidson car. There is some dispute as to exactly where the Davidsons, Gran and the decedent were standing before the accident. The testimony of the plaintiff's witnesses is that they were standing at the rear left of the Davidson car filling the tank; that the decedent was standing behind the Davidson car; that the defendant came at increasing speed but when he saw the lights of the cars he turned his car to the left, apparently intending to pass between the cars but when close to them he suddenly and without using his brake, changed the course of his car to the right, back into the east lane, not giving the decedent time to get out of the way before he hit the Davidson car. Plaintiff's witnesses escaped to the west. According to the testimony of the defendant when he saw them, they were standing between the two cars and on his approach all of them went off the road towards the west ditch except decedent,

Bentsen, who went east. When defendant changed the course of his car to the east lane Bentsen was caught between the defendant's car and the Davidson car as they collided. Defendant was driving with sufficient force to push the Davidson car 61 feet ahead. After the cars stopped Bentsen was pulled out from under defendant's car, badly injured, and from which injuries he died. The accident occurred at 1:30 A.M. Sept. 28, 1955. Both defendant and the decedent had been drinking some intoxicating liquor that afternoon and evening.

The defendant testified as to how the tragedy happened as follows:

"Q. You say you accelerated your vehicle and proceeded north down that county road? A. Yes.

"Q. While you were doing this did you observe anything at all? A. Not immediately.

"Q. Later did you observe something? A. Yes.

"Q. What did you observe? A. Some lights on the road.

"Q. Describe these lights for the court and jury. A. I saw what looked to be two tail lights and some lights ahead of me.

"Q. On your side of the road? A. Yes.

"Q. Did you or did you not take that to be another automobile? A. Yes.

"Q. Did you or did you not know at first whether or not it was going? A. No.

"Q. Then you proceeded northward, is that correct? A. Yes.

"Q. Were you able to determine later whether or not that car was moving? A. Yes.

"Q. What was your determination? A. As I approached it it did not seem to be getting ahead of me any further.

"Q. As you got quite close did you observe anything else? A. Not immediately.

"Q. Then what did you do with your vehicle? A. I started to pull over in the passing lane.

"Q. You turned out into the passing lane, is that correct? A. Yes.

"Mr. Kosanda: The vehicle on his left hand side or the west side of the road.

"By the Court: Supposed to be headed south?

"Mr. Kosanda: That is correct, yes.

"Q. Calling your attention to that vehicle did you have an opportunity to see whether or not there were any occupants in the vehicle? A. Yes.

"Q. Were there? A. Yes.

"Q. Tell the court and jury what you saw. A. When I picked up this dark car I saw what appeared to be a woman in there with her hands up.

"Q. Did you at any time in front of that vehicle see anybody waving to you? A. No.

"Q. Then what action did you take after seeing this figure and being in front of it, if any? A. I pulled back to my right to avoid hitting it.

"Q. You got back into the lane you originally had been driving? A. Yes.

"Q. What did you see then, tell the court and jury what happened? A. I seen a bunch of people with this car in my path, this car that I hit.

"Q. Were you or were you not attempting to go between those two vehicles? A. I didn't have time.

"By the Court: You had better answer the question, yes or no. A. Yes.

"Q. With relation to those vehicles where were the people at that time? A. On the left hand side of the car with those lights on.

"Q. Of the parked vehicle? A. The car headed north.

"Q. What were these people doing at that time, if anything? A. They were waving their arms.

"Q. Did you know exactly how many people were in that group? A. No.

"Q. Do you know if it was more than one? A. Yes.

"Q. Were you able to see if there was a woman in that group? A. Yes.

"Q. Was there? A. Yes.

"Q. Was she waving? A. Yes.

"Q. What further action did those people take, if any? A. Just before I hit this other car one person out of that group stepped between the two.

"Q. Did you strike this person with your car? A. Yes.

"Q. Did you strike him with your car pointed in a northerly direction? A. Yes.

"Q. Did you know what the other people did at that time? A. I do not know.

"Q. Do you know what path your vehicle took after that? A. Not at that time I didn't * * *.

"Q. Afterward were you able to determine where your vehicle had gone? A. Yes.

"Q. Tell the court and jury about what path it took after it struck this vehicle in front of you? A. It went to the left hand and ahead.

"Q. About where did it wind up with relation to the road? A. On the

**568**

left hand side of the road very near the left hand shoulder."

Under the testimony it is clear that all of the parties concerned saw that the defendant would collide with either the Gran or the Davidson car. They all tried to avoid the collision. According to defendant's testimony decedent tried to escape to the east. If the defendant had not changed his course and returned to the east lane, the decedent's course in going east would have been a safe course. There is a dispute in the testimony as to whether the defendant, when decedent was found, badly injured, admitted that it was all his fault. The jury could find on the testimony that the defendant was guilty of driving too fast and without proper lookout, and that the decedent was not negligent even if he chose what became the wrong course in trying to avoid the oncoming defendant.

The court in the memorandum decision on denying the motion for judgment notwithstanding says: "The testimony of the witnesses for the respective parties is so much in conflict that the court must hesitate to say the jury was not justified in this finding * * *."

The evidence in this case is not of such a nature as "to make an issue of contributory negligence one of law for the court."

■ On a motion for a judgment notwithstanding the verdict the evidence is considered in the light most favorable to the verdict. See Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Moe v. Kettwig, N.D., 68 N.W.2d 853; Geier v. Tjaden, N.D., 74 N. W.2d 361.

Considering the evidence in that light the action of the trial court in denying the motion was not erroneous.

The order of the district court is affirmed.

BURKE, JOHNSON, SATHRE, and MORRIS, JJ., concur.