## SWEENEY *v.* ERVING.*

---

PHYSICIANS AND SURGEONS; RES IPSA LOQUITUR; NEGLIGENCE.

1. The degree of skill and learning which a physician or surgeon is required to possess and exercise is that ordinarily possessed and exercised by members of his profession in the same line of practice in the locality, and the rule is applicable to a physician who operates an X-ray apparatus, by whose alleged negligence it is claimed a patient was burned by the rays.

2. No inference of negligence—save in exceptional cases—can be drawn from the result of treatment by a physician or surgeon; and even in such exceptional cases, where a prima facie case is made out by proof of treatment and resultant injury, the doctrine of *res ipsa loquitur* does not relieve the party claiming damages for alleged malpractice from the burden of establishing his case by a preponderance of the evidence. (Following *Sullivan* v. *Capital Traction Co.* 34 App. D. C. 358.)

3. Where a woman is sent by her surgeon, a man of recognized professional ability, by whom she has been under treatment, to another physician, an X-ray operator, in order that he may locate a supposed fractured rib, and there is nothing about her condition to show that she would be peculiarly liable to injury by the rays, the operator is justified in

---

*As to degree of care and skill required of physician or surgeon, see note to *Whitesell* v. *Hill,* 37 L.R.A. 830.

relying upon the judgment of the surgeon, that her condition is such as
to warrant the use of the rays.

No. 2094.  Submitted March 2, 1910.  Decided April 5, 1910.

HEARING on an appeal by the plaintiff from a judgment of
the Supreme Court of the District of Columbia, on verdict, in
an action for damages for alleged negligence.      *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment of the supreme court of the District
of Columbia upon a verdict for the defendant in an action in
case against William G. Erving, a physician, for negligence and
unskilfulness in applying X-rays to the back of plaintiff, Anne
Sweeney, appellant here.

To the plaintiff's declaration the defendant pleaded the gen-
eral issue.  At the trial, the plaintiff's evidence was substan-
tially as follows:  During the winter and spring of 1905, Dr.
James Kerr, a surgeon, was treating plaintiff for a fractured
rib, which injury she claimed was produced by the negligence
of a railroad company in February, 1905.  The company de-
nied the existence of such fracture, and, at its request, she sub-
mitted, in April, 1905, to an X-ray diagnosis by Dr. Grey, an
X-ray specialist.  This diagnosis and the radiograph then made
failed to disclose a fracture.  Thereupon Dr. Kerr, represent-
ing plaintiff, arranged with the defendant, Dr. Erving, of this
city, for another diagnosis by X-ray.  Thereupon plaintiff
visited defendant's office four times, the first time on May 21st,
1905.  Each of the subsequent visits she made at the request
of the defendant.  Upon the first visit there were two ex-
posures, upon the second two, upon the third three, and upon
the fourth three.  According to plaintiff's testimony, none of
these exposures resulted in a satisfactory radiograph.  She
further testified that before the first exposure she informed
defendant that her employer "had told her the X-ray was dan-
gerous, in reply to which the defendant told her there was no
more danger to her than to himself, and the defendant's wife,

who was his assistant in his X-ray work, and who was then present, then said to the plaintiff that the defendant and his wife had never had an accident in all their experience, and had no more reason to have one then than in the thousand and more exposures previously made by them." Plaintiff felt no bad effects from the operation by Dr. Grey, or from the operation by defendant until her fourth visit, when, during one of the exposures, she felt faint and directed defendant to stop. At about 10 o'clock that night her back, which was the part exposed in all the operations by defendant, was red and itchy. About two weeks thereafter, finding her back burned and injury developing, she again went to the defendant, and he was the first physician to examine the injury. He continued to treat the burn from that time until June 30th, 1905, when he left the city. Subsequently plaintiff had been treated by other physicians and in hospitals, but the injury had not been cured, and still continued to cause her much suffering and to incapacitate her for work. Here plaintiff rested and defendant moved for a verdict, which motion the court overruled.

The evidence of the defendant was to the effect that his wife was a duly qualified physician, and that both he and his wife had had long experience in the use of the X-ray machine; that the machine to which plaintiff was exposed was an excellent one and in good condition at the time of the exposures; that on the plaintiff's first visit she was told by the defendant's wife in his hearing, "that while both she and her husband, the defendant, had subjected many persons to X-ray exposures, and had never had any ill results; it was impossible, by the use of any degree of care, to prevent occasional X-ray burns from the use of the X-ray apparatus;" that plaintiff's first complaint was made about seventeen days after, and not at, the last exposure; that when this complaint was made, defendant requested plaintiff to return the next day, but that she did not return for ten days. The defendant introduced in his behalf six practising physicians of the District, "and each of them testified that he was acquainted with the literature of the X-ray apparatus and its use, and had themselves had a great deal of

practical experience with such apparatus, some in the healing
of diseases by it, and some in the taking of radiograph pictures
by the X-ray process, and some in both. Each of these wit-
nesses was informed as to the substance of the defendant's
testimony as to the character of his X-ray apparatus, and the
manner in which it was used upon the plaintiff, and the dura-
tion of the several exposures to which she was subjected, and
each of them testified that the machine was a good one of its
kind, and that the manner in which it had been used upon the
plaintiff was in accordance with the practice of careful and
prudent X-ray operators, and that, according to their experi-
ence and reading, it was safe as exposures to the X-ray appara-
tus could be made."

The plaintiff introduced no testimony in rebuttal, and the
defendant again moved for a verdict, which motion was again
denied. The case comes here on errors assigned upon the re-
fusal of certain of plaintiff's instructions and the granting of
certain of defendant's.

*Mr. Lorenzo A. Bailey* for the appellant.

*Mr. Charles L. Frailey* and *Mr. A. S. Worthington* for the
appellee.

Mr. Justice ROBB delivered the opinion of the Court:

1. The court declined to rule that the fact that the plaintiff
was burned in the course of the operation of the X-ray apparatus
by the defendant, if the jury should find that fact to be estab-
lished, was of itself evidence of negligence on the part of the
defendant, and imposed upon him the burden of proving by a
preponderance of the evidence that the plaintiff's injury was
not caused in whole or in part by his negligence, and granted
the following prayer of the defendant: "The jury are instruct-
ed that the burden of proof is upon the plaintiff to establish
by a fair preponderance of the evidence that the burn upon her
back was caused by negligence on the part of the defendant in
the manner in which he subjected her to exposure to the X-ray."

It is well settled that the degree of skill and learning which a physician or surgeon is required to possess and exercise is that degree of skill and learning ordinarily possessed and exercised by members of his profession in the same line of practice in that locality. *Sheldon* v. *Wright,* 80 Vt. 298, 67 Atl. 807; *State use of Janney* v. *Housekeeper,* 70 Md. 162, 2 L.R.A. 587, 14 Am. St. Rep. 340, 16 Atl. 382; *McDonald* v. *Harris,* 131 Ala. 359, 31 So. 548; *Pike* v. *Honsinger,* 155 N. Y. 201, 63 Am. St. Rep. 655, 49 N. E. 760; *Ely* v. *Wilbur,* 49 N. J. L. 685, 60 Am. Rep. 668, 10 Atl. 358, 441; *Boon* v. *Murphy,* 108 N. C. 187, 12 S. E. 1032. Such also is the rule applied to those practising osteopathy. *Wilkins* v. *Brock,* 81 Vt. 332, 70 Atl. 572. The same rule applies to veterinary surgeons. *Barney* v. *Pinkham,* 29 Neb. 350, 26 Am. St. Rep. 389, 45 N. W. 694.

In *Henslin* v. *Wheaton,* 91 Minn. 219, 64 L.R.A. 126, 103 Am. St. Rep. 504, 97 N. W. 882, 1 A. & E. Ann. Cas. 19, which was an action against a physician for negligence and unskilfulness in operating an X-ray apparatus, whereby plaintiff was injured, it was held that the rule of liability in such a case is the same as that applied in other actions for malpractice; namely, "such reasonable care and skill as is usually given by physicians and surgeons in good standing." In that case, the purpose of the application of the X-ray was to locate a foreign substance thought to be in plaintiff's lungs.

Generally speaking, no inference of negligence can be drawn from the result of the treatment of a physician or surgeon. In the absence of special contract they are not insurers, and there must be evidence of negligence by witnesses qualified to testify. *Wood* v. *Barker,* 49 Mich. 295, 13 N. W. 597; *Piles* v. *Hughes,* 10 Iowa, 579. "If the maxim *res ipsa loquitur* were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practise the healing art, for they would have to assume finan-

cial·liability for nearly all 'the ills that flesh is heir to.' " *Ewing*
v. *Goode,* 78 Fed. 442.

There are exceptional cases where the result of an operation
performed, if unexplained, may warrant an inference of negli-
gence. Thus, evidence showing that after a broken ankle was
reset, the ankle was crooked and the ankle joint stiff, tends to
prove negligence on the part of the physician in setting the
ankle, which evidence should be submitted to the jury. *Hicker-
son* v. *Neely,* 21 Ky. L. Rep. 1257, 54 S. W. 842. The fact
that a physician attending a woman at childbirth failed to re-
move all the placenta justifies, if unexplained, a conclusion of
negligence. Moratzky v. Wirth, 67 Minn. 46, 69 N. W. 480.

The result of the above general rule is that, in an action
for malpractice, the burden is always on the one alleging it,
and even in exceptional cases, where a prima facie case is made
out by proof of the operation and resultant injury, "the doc-
trine of *res ipsa loquitur* does not relieve plaintiff of the burden
imposed upon him of establishing his case by a preponderance
of the evidence." *Sullivan* v. *Capital Traction Co.* 34 App.
D. C. 358. When the defendant held himself out to the public
as qualified in the use of the X-ray for the treatment and
diagnosis of ailments, the law implied on his part the promise
and duty to exercise reasonable skill and care in such use. In
other ·words, that he would bring to bear in this particular
branch of the profession the same degree of skill and care re-
quired of physicians and surgeons in other branches of the pro-
fession. In the absence of the defendant's alleged statement
to the plaintiff that "there was no more danger to her than to
himself," it would have been the duty of the court to have grant-
ed defendant's request at the close of plaintiff's evidence for a
directed verdict, for, in the absence of that statement, there
would have been no evidence of negligence. In *Wilkins* v.
*Brock,* supra, the court said:. "The defendant Brock's motion
for a verdict should have been sustained, for, to warrant the
finding of malpractice, it was necessary to have medical expert
testimony to show it, and there was none; but, on the contrary,
there was such testimony tending to show that the treatment was

proper, and according to the principles and practice of osteopathy. It was not enough to show merely that the treatment was injurious, but it was necessary to go further, and to show by competent witnesses that the requisite care and skill was not exercised in giving it, for that was the only question, according to the plaintiff's brief, and that was not done. Such is the doctrine of all the cases."

Here there was no testimony that the instrument used by the defendant was out of repair, that the exposures were of too frequent periods or of too great duration. Neither is there any evidence of lack of skill. On the contrary, the defendant testified to his long experience in the use of such a machine, to the condition of the machine, and to the exact character of its use upon the plaintiff. In addition to this testimony, he introduced six physicians skilled in that particular branch of practice, whose testimony, without exception, negatived the charge of negligence. In that state of the case, the plaintiff received all, and possibly more than, the consideration to which she was entitled by being permitted to go to the jury at all.

*Shockley* v. *Tucker,* 127 Iowa, 456, 103 N. W. 360, was an action against a physician for negligence in the use of the X-rays in the treatment of appendicitis, and negligence in the application of the remedy. The court, "without elaborating the questions presented," ruled that the fact that the plaintiff sustained an X-ray burn was of itself evidence of improper treatment. This conclusion is, we think, in conflict with the rule of other jurisdictions. The evidence in this record justifies the finding that the use of the X-ray in the diagnosis and treatment of human ills is recognized and practised by the medical profession. Such being the case, we see no reason why a different rule should apply to practitioners in this line than is applied to other practitioners. There was no error, therefore, in refusing plaintiff's instruction and in granting the defendant's.

2. The only other assignment necessary to be noticed is based upon the refusal of the court to grant the following prayer: "If you believe, upon the evidence, that, in the ordinary and careful operation of the X-ray apparatus upon a woman by

an operator having the requisite knowledge and skill enabling him to operate it with the utmost degree of safety, there is a possibility, which could not be foreseen by such an operator, of injury to the woman by reason of her condition or of any matter tending to predispose her to injury in consequence of such operation, and that such possibility was known to the defendant, or, by proper study or inquiry, should have been known to him, it was his duty to inform the plaintiff of such possibility before he operated upon her; and if you further believe upon the evidence that he failed to perform such duty, or that, in the performance of the operation, he failed to exercise the skill and care required of him as such operator, and that the plaintiff was thereby injured, your verdict should be for the plaintiff." There are at least two objections to this prayer, either of which would have justified its rejection. While it is a general rule that it is incumbent upon a physician properly to inform himself of the condition of his patient, that he may intelligently exercise the skill of his calling (*Staloch* v. *Holm,* 100 Minn. 276, 9 L.R.A.(N.S.) 712, 111 N. W. 264), there is nothing in the record to justify the inference that the condition of the plaintiff when the defendant subjected her to X-ray exposures was such as to render her peculiarly liable to injury. Having been under treatment by a surgeon of recognized ability, and having been sent to the defendant by such surgeon, for the purpose named, we think the defendant, in the absence of anything warranting a contrary conclusion, was justified in relying upon the judgment of the surgeon.

Finding no error, the judgment must be affirmed, with costs.

*Affirmed.*

On application of the appellant, a writ of error to the Supreme Court of the United States was allowed April 13, 1910.