Clarence **O.** SWANSON, Plaintiff,

v.

**Frank A. HILL and John H. Moore,**
**Defendants.**

**Frances SWANSON, Plaintiff,**

v.

**Frank A. HILL and John H. Moore,**
**Defendants.**

**Civ. Nos. 3415, 3416.**

United States District Court
D. North Dakota,
Northeastern Division.

Sept. 30, 1958.

Daniel S. Letnes and James L. Hansen, Grand Forks, N. D., for plaintiffs.

Herbert G. Nilles and J. Gerald Nilles of Nilles, Oehlert & Nilles, Fargo, N. D., for defendants.

RONALD N. DAVIES, District Judge.

The plaintiffs, husband and wife, brought separate actions against the defendant surgeons, both of whom are specialists in their field, to recover damages for alleged malpractice said to have occurred incident to an abdominal operation performed by the defendants upon the plaintiff, Mrs. Swanson. The actions were consolidated for trial.

The defendants were employed to, and did perform a serious surgical operation on the plaintiff, Frances Swanson, on December 9, 1954, at Grand Forks, North Dakota. Testimony disclosed that the surgery was performed in a competent and skillful manner and that Mrs. Swanson recovered from the operation in the normal course of events.

However, the evidence further disclosed that during the course of the surgery an instrument commonly described as a Kelly forceps, approximately 6½ inches long, was left in the patient's abdominal cavity.

The testimony indicated that the surgeons had made some search of the operating area, but because of the precarious condition of the patient, time was of the essence and they judged it absolutely necessary to complete the surgery as speedily as possible. The surgeons were supported in the use of this procedure by other expert medical testimony.

Subsequently, after Mrs. Swanson allegedly had undergone pain and suffering for some time, surgeons in another state by means of x-ray and examination discovered the Kelly forceps in her abdomen. The forceps had pierced the transverse colon. An operation was performed on February 22, 1956, and the forceps removed. These lawsuits followed and were tried to a jury which returned verdicts for the plaintiffs. The matter is now before the Court on defendants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Counsel for the defendant surgeons have set out a number of grounds upon which they base their motion. Although all grounds have been carefully noted, only those considered germane to a determination of the motion will be discussed here.

This is not an action in which damages were sought after an operation in which the surgeons exercised the degree of skill and good practice required of them by all proper medical standards but, nevertheless, ended badly for the patient. The plaintiffs did not here complain of the result of the particular surgery performed on Mrs. Swanson by the defendant doctors. Surgeons are not guarantors of the results of surgery on their patients. The plaintiffs here did complain that negligence on the part of the defendants in failing to remove the Kelly forceps injured and damaged them, apart from any consideration of the successful surgery performed in the early morning hours of December 9, 1954. To state it plainly, the operation was a success, but the patient was still carrying a Kelly forceps in her abdomen.

It is strenuously urged that good surgical practice dictated that no search be made in the abdomen above the site of the incision for fear of adding shock and trauma to Mrs. Swanson's already serious condition and that all of the surgical practices, procedures and methods used, including the lack of a search in the upper abdomen and among the intestines, were accepted and approved practices by the medical profession in the community where the surgery was performed.

Defendants' counsel have cited Ales v. Ryan, 8 Cal.2d 82, 103, 64 P.2d 409, which was cited with approval in Key v. Caldwell, 39 Cal.App.2d 698, 104 P.2d 87, and which contains quotations from Davis v. Kerr, 239 Pa. 351, 86 A. 1007, 46 L.R.A.,N.S., 611. The Supreme Court of California in the *Ales case,* after observing it saw nothing in the evidence to warrant the inference that the surgeon exercised due care, asked the following questions with reference to the proposition that further exploration for sponges might endanger the safety of the patient [8 Cal.2d 82, 64 P.2d 419]:

"Why was a foreign substance left in the parts, which the operating surgeon should have removed? It was for him to acquit himself of the negligence with respect to it. The sponge escaped his observation. Why? Was it so hidden and concealed that reasonable care on his part would not have disclosed it, or were conditions such that, in his

professional judgment, further exploration by him for sponges would have endangered the safety of the patient? In a word, did he do all that reasonable care and skill would require? Except as one or the other of these questions can be answered affirmatively from the evidence, the law will presume to the contrary, and attribute the unfortunate consequences to his contributing negligence."

Attempting to apply *Ales* to the case at bar, defendants' counsel contend that the evidence is undisputed that a *further exploration* would have endangered the safety of Mrs. Swanson. The use of the word "further" suggests, of course, and it was borne out by the evidence, that a complete exploration could not be made because of her condition and, therefore, the surgeons had done all that reasonable care and skill would require.

But defendants' counsel are completely silent on *why, if Mrs. Swanson's condition did not permit "further" exploration, surgeons of their professional skill and competence did not take appropriate steps after Mrs. Swanson's recovery from this particular surgery to assure themselves that she carried no foreign body within her person.*

Assuredly, the patient was by all medical testimony in serious condition. For that reason her personal physician referred her to the defendant surgeons, highly skilled specialists. If the ordinary exploration for instruments or other foreign bodies could not have been made by reason of Mrs. Swanson's physical condition, one need not be a surgeon to suggest that professional prudence would have indicated a post-operative x-ray and examination in the area of surgery.

Defendants' counsel in a thorough and exhaustive brief have cited case after case in which judgments have been entered in favor of doctors when suits were brought against them. Typical thereof is the case of Steinmetz v. Humphrey, 289 Ky. 709, 160 S.W.2d 6, 8, Court of Appeals of Kentucky. That Court (which recognizes the doctrine of res ipsa loquitur as applied to surgical cases where instruments or sponges are left in the abdominal cavity), argue the defendants, reached the precise result contended for by them in this case.

In the *Humphrey* case during the course of the operation surgical needles were broken off and remained in the wound after surgery. The Kentucky Court held that " * * * All medical evidence in the case is to the effect that it would have been bad surgical practice for Dr. Humphrey to have probed for the broken needles on account of danger of spreading infection. * * * *The appellant (plaintiff) merely proved that the appellee (defendant doctor) permitted the needle to remain in the wound but did not prove by any competent evidence that this was negligently done or that any damage or injury resulted from such actions.*" (Italics supplied.)

There is no analogy whatever between the *Humphrey* case and this one. Dr. Humphrey *knew* a broken needle had been left in the wound, but because of the condition of the patient during surgery and the danger of spreading infection, it was considered bad medical practice to probe for it at that time. Moreover, in the Humphrey case the Court held, among other things, that the plaintiff did not prove any damage or injury as a result of the broken needles being left in the wound.

In the instant case the defendant surgeons did *not* know that an instrument had been left in Mrs. Swanson's abdomen and she was assuredly damaged and injured because of the Kelly forceps being in her body for a period of nearly 14 months until its surgical removal.

It is argued that this case should not have been submitted to the jury under the doctrine of res ipsa loquitur. It is defendants' position that "the inference of negligence arises only in the absence of an explanation by the defendants." But to explain is one thing, to excuse is quite another.

The defendants have addressed themselves also to application of the substan-

tive decisional law applicable to this case. Gallagher v. Kermott, 1927, 56 N.D. 176, 216 N.W. 569, is cited in support of defendants' position that in North Dakota the doctrine of *res ipsa loquitur* is inapplicable to malpractice actions. Thirteen years after the Gallagher case in Tvedt v. Haugen, 1940, 70 N.D. 335, 294 N.W. 183, 132 A.L.R. 379, the North Dakota Supreme Court circumvented the rule of the Gallagher case, and in so doing, impliedly rejected it.

Moreover, the doctrine of *res ipsa loquitur* is not a rule of pleading, not a substantive rule of law, but a rule of evidence.

In Ramsouer v. Midland Valley R. Co., 8 Cir., 1943, 135 F.2d 101, 106, Chief Judge Gardner, speaking for the Court, said:

"It is urged by defendant that plaintiff was not entitled to go to the jury because she alleged a cause of action based on the rule or doctrine of res ipsa loquitur, in that the evidence disclosed the cause of the injury. We think this is a misconception of the application of the doctrine of res ipsa loquitur. If the evidence had disclosed the cause of the injury and had also disclosed that it was not caused in whole or in part by the negligence of the defendant, then plaintiff's action would fail. The doctrine of res ipsa loquitur, however, is not a rule of pleading, not a substantive rule of law, but a rule of evidence. Whitmore v. Herrick, 205 Iowa 621, 218 N.W. 334; Heffter v. Northern States Power Co., 173 Minn. 215, 217 N.W. 102; Lynch v. Ninemire Packing Co., 63 Wash. 423, 115 P. 838, L.R.A. 1917E, 178; Stewart v. Crystal Coca-Cola Bottling Co., 50 Ariz. 60, 68 P.2d 952; Michener v. Hutton, 203 Cal. 604, 265 P. 238, 59 A.L.R. 480; Wilson v. Colonial Air Transport, 278 Mass. 420, 180 N.E. 212, 83 A.L.R. 329. * * * The doctrine is applicable where there is no evidence, circumstantial or other-

wise, to show negligence apart from the happening of the accident or the infliction of the injury. But the rejection of the doctrine of res ipsa loquitur does not mean that negligence may not be established by circumstantial evidence, as well as by direct evidence. Gantt v. Columbia Coca-Cola Bottling Co., 193 S.C. 51, 7 S.E.2d 641, 127 A.L.R. 1185; Heffter v. Northern States Power Co., supra."

In a recent case, Johnston v. Rodis, D.C.1957, 151 F.Supp. 345, 346, Judge Alexander Holtzoff succinctly stated certain well-settled principles in the type of case with which we are here concerned. This Court quotes with approval the following language used by Judge Holtzoff in that case:

"The general principles of law governing the liability of physicians and surgeons for negligence, are well settled. A physician or surgeon is obligated to exercise the degree of care and skill that is ordinarily employed by members of the profession in the same line of practice in his own or similar localities. Failure to use such care or skill constitutes negligence. On the other hand, he is not an insurer of health or a guarantor of results. He undertakes only to abide by the prevailing standards and to utilize the skill possessed generally by others practicing in his field and to accord the care that they would ordinarily extend in similar circumstances. He must have latitude for the exercise of reasonable judgment, and is not liable for a mere error in his decisions. A patient who claims to have been injured by his negligence, has the burden of proving by a preponderance of the evidence that the defendant departed from the applicable standards or was unskillful or negligent. Sweeney v. Erving, 35 App. D.C. 57, 61, 43 L.R.A.,N.S., 734, affirmed 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815; Rodgers v. Lawson, 83 U.S.App.D.C. 281, 170 F.2d 157.

"On the other hand the doctrine of *res ipsa loquitur* permits a rebuttable inference of negligence to be drawn from the mere occurrence of an accident and the resulting injury. A *prima facie* case is thereby established to be submitted to the jury, without other proof of negligence. This doctrine is, however, generally restricted to cases of injuries inflicted by a mechanical apparatus or some other inanimate object within the defendant's exclusive control. It does not ordinarily apply to cases of injuries caused by the careless act or thoughtless omission of a human being. It follows, hence, that there is no sound basis for extending it to actions for negligence against a member of a learned profession. To do otherwise would practically require him to guaranty success in every case. Such a course would be contrary to the principles of fairness to the professions and against the best interests of the public. It would cast an undue burden on the medical profession and might place every doctor on the defensive against any disgruntled patient whom he has failed to cure. Consequently, the doctrine of *res ipsa loquitur* may not be invoked in an action for malpractice against a physician or surgeon. * * *

"The only exception to the principle that the doctrine of *res ipsa loquitur* may not be invoked in actions for malpractice, consists of cases where the undesirable result is such that it is evident even to a layman and could not have occurred except for the doctor's negligence, as, for instance, when a foreign object is left in a wound after an operation."

Conceding—as the Court does and as the record discloses—the integrity, skill and professional competence of the two specialists here involved, conceding the manifestly unfavorable conditions under which they were compelled to operate, conceding that the patient's life was saved by the timely efforts of these excellent surgeons, conceding these things and much else defendants' counsel contend for, the inescapable conclusion must be reached, nevertheless, that the defendants here, and they alone, were negligent and answerable to the plaintiffs for the resultant damage and injury caused by leaving the Kelly forceps in Mrs. Swanson's body, and that the case was properly submitted to the jury under the doctrine of *res ipsa loquitur*.

[4] We now turn to defendants' contention that the damages awarded plaintiffs were excessive and given under the influence of passion, prejudice and undue bias. Nothing supports the defendants' argument in this regard, and the Court is quite unable to say that the size of the verdicts rendered here is a shock to the judicial conscience.

Moreover, this Court thinks, as a general rule, it is an illogical theory to suppose that a trial judge in the cloistered atmosphere of his chambers can, by some legal legerdemain, better determine the precise amounts to be awarded litigants than a jury of twelve conscientious citizens. To be sure, there have been and will be cases requiring reduction of verdicts. This case is not among them.

For the reasons stated herein, defendants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial is denied.

Counsel for the plaintiffs will prepare and transmit to the Clerk of this court an order in conformance.