273 F.2d 830
 107 U.S.App.D.C. 16
 Hattie ROTAN, Administratrix of the Estate of Rose Belle
Wade, also known as Rose Belle Carter, also known
as Rose Belle Wise, Appellant,
v.
Seymour GREENBAUM, M.D., Appellee.
 No. 15037.
 United States Court of Appeals District of Columbia Circuit.
 Argued Dec. 3, 1959.
Decided Dec. 23, 1959.
 
 Mr. Ferdinand J. Mack, Washington, D.C., with whom Mr. Arthur J. Hilland, Washington, D.C., was on the brief, for appellant.
 Mr. Arthur V. Butler, Washington, D.C., with whom Messrs. H. Mason Welch, J. Harry Welch, J. Joseph Barse, Walter J. Murphy, Jr., Washington, D.C., and James A. Welch, Washington, D.C., were on the brief, for appellee.
 Before Mr. Justice BURTON, retired,* WILBUR K. MILLER, and FAHY, Circuit Judges.
 FAHY, Circuit Judge.
 
 
 1
 The appeal is by plaintiff in the District Court from a judgment entered there on a verdict directed by the court for defendant, a physician, in an action for wrongful death. Plaintiff is the administratrix of the estate of her daughter Rose Belle Wade, who died June 6, 1956, at the office of defendant about fifteen or twenty minutes after he had administered to her a 600,000 unit injection of penicillin. In our view the evidence raised an issue for the jury to decide as to whether or nor the injection of penicillin in the circumstances was due to defendant's negligence, and, if so, was a proximate cause of the death. Accordingly we shall reverse and remand for a new trial.
 
 
 2
 An autopsy card was admitted in evidence without objection during the testimony of the Deputy Coroner. The card reported the result of an autopsy on the daughter held June 7, 1956, the day after her death. Anaphylactic shock-- hypersusceptibility-- due to penicillin reaction was reported on the card to have been found. The Deputy Coroner also testified without objection as follows: 'The history says she received it (the penicillin injection) for mumps.' The report as to what occurred, received from the Homicide Squad of the Metropolitan Police Department, acting as the Coroner's investigative organ, read: 'Died suddenly about 15 minutes after receiving an injection of penicillin, 600,000 units, for mumps.'
 
 
 3
 At the trial defendant was called as a witness by the plaintiff, and in response to a subpoena brought his records of his treatment of the deceased. He testified that penicillin is not a therapeutic for mumps and that if a physician in the District of Columbia gave penicillin for mumps, per se, it would not be good and approved practice. On his record, in the form of a card, is the entry, '6/6/56 Expired after penicillin, 600,000 for ? mumps. Expired 2:15 p.m.,' with the question mark preceding the word 'mumps' and the words '& pharangitis' inserted above the line after the word 'mumps,' both by the use apparently of a different pen from that used in the remainder of the entry. Defendant testified that part of this entry was probably made immediately after the treatment and the other part sometime later, the exact time of which he did not specify. As originally written he said the entry on the card read, 'Expired after penicillin for mumps. Expired 2:15 p.m.' The insertions of the question mark and '& pharangitis' were, he said, at some time after the patient died. He also testified he had been advised by the patient that she had never had any reaction to previous penicillin injections.
 
 
 4
 From the foregoing the jury could have found as a fact that the penicillin injection was given for mumps alone, that such treatment for mumps did not meet the requirements of standard practice in the District of Columbia,[1] that the defendant accordingly was negligent, and that this negligence was a proximate cause of the death.
 
 
 5
 The case might be different on the question of negligence if plaintiff's case rested on the manner of administering the penicillin and the testing procedures used, or if in fact the injection was given for pharyngitis and was within standard practice for that affliction;[2] but we repeat that the evidence to which we have referred raised an issue of fact as to whether when administered the injection was for mumps, not for pharyngitis to which a later reference was made only after the patient had died, and also whether such an injection for mumps did not conform with the applicable standard practice.
 
 
 6
 On the question of proximate cause the issue was also one of fact for the jury. The immediate reaction and sudden death following the injection could unquestionably be found by a jury to be attributable to the injection. Though it appears that the patient was hypersusceptible to penicillin this does not obviate the fact-- as the jury could find-- that this hypersusceptibility would not have been aroused so as to result in death except for the injection of penicillin as a treatment for mumps.
 
 
 7
 Reversed and remanded.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. 294(a)
 
 
 [1]
 The standard of care for physicians in this jurisdiction was settled in Sweeney v. Erving, 35 App.D.C. 57, 43 L.R.A.,N.S., 734, affirmed 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815. There we said: 'It is well settled that the degree of skill and learning which a physician or surgeon is required to possess and exercise is that degree of skill and learning ordinarily possessed and exercised by members of his profession in the same line of practice in that locality.' 35 App.D.C. at page 61. And see McCauley v. Moran, 95 U.S.App.D.C. 89, 219 F.2d 771; Stark v. White, 93 U.S.App.D.C. 241, 208 F.2d 848; Furr v. Herzmark, 92 U.S.App.D.C. 350, 353-354, 206 F.2d 468, 472, and cases therein cited
 
 
 [2]
 Pharyngitis is an inflammation of the pharynx-- that part of the alimentary canal between the base of the tongue and the esophagus-- usually accompanied by pain in the throat and fever