JAMES H. McDONNELL, Appellant, v. GEORGE MONTEITH, Respondent.

(231 N. W. 854.)

Opinion filed August 4, 1930.

*F. E. McCurdy,* for appellant.

*Charles Coventry* and *Zuger & Tillotson,* for respondent.

NUESSLE, J. The plaintiff, McDonnell, is a farmer residing near Hazelton, a small town in Emmons county, North Dakota. The defendant, Monteith, is a physician and surgeon practicing at Hazelton. On October 17, 1927, McDonnell, who was operating a threshing machine, had his right arm caught between the belt and the pulley of the self-feeder. As a result he suffered a comminuted fracture of one of the bones (the radius) of the forearm. The flesh of the arm was badly bruised and lacerated and the skin was burned from the friction. He immediately went to the defendant for medical treatment. He inquired if defendant could attend to the injury and set the bone or whether he ought to go to Bismarck where there were hospitals and other facilities. The defendant said he could attend to the arm as well as the doctors at Bismarck. So McDonnell let the defendant attend to it. He reduced the fracture by the extension method and ascertained when the bone was in place by palpation. He put wire splints on the arm, bandaged it, and otherwise fixed it up. Owing to the burn and open wounds it was necessary to exercise special care so that there should be no infection. The doctor told McDonnell that the arm would pain for some time and that if the pain was too great he should return. He did return within a few hours and insisted that the arm was not properly set. The doctor then reset it and again applied the splints and bandaged the arm, and gave directions as to the care which should be exercised by McDonnell. Thereafter for some time he examined the arm daily, on each occasion removing the splints in order to dress the wounds and burn. McDonnell complained that he suffered pain continually. He said he could feel the bones grating and pointed out that the arm was crooked, but the doctor said that the arm was getting

along all right. About seven weeks after the accident, some time the fore part of December, the doctor finally examined the arm, removed the bandages and splints, and said that plaintiff should exercise the arm as much as he could. However, the arm hurt so greatly that the plaintiff returned to the doctor, who bandaged it with adhesive tape. On the third day thereafter the arm had swelled so badly and pained so much that plaintiff removed the tape as the doctor had told him he might do in such case. The doctor then retaped the arm somewhat more loosely. This bandage remained on for some time. About January 3rd or 4th, plaintiff saw the doctor for the last time. The doctor said the fracture was getting along fine but that it would take a little time. He told plaintiff to exercise his hand all he could. However, the pain continued, so on January 10th plaintiff went to Bismarck to secure further attention. He consulted a chiropractor who took an X-ray picture of the arm and thus it was ascertained that there was and had been no union of the broken bone. The chiropractor advised him to consult a surgeon and go to a hospital. He did so. It then appeared necessary to resort to surgery and open up the arm. On January 16th the surgeon operated on the arm. He removed bone splinters which were in the fracture, and owing to the time which had transpired since the break it was necessary to remove enough of the broken ends of the bone to insure circulation and provide a place for a callous to form so as to make a union possible. This was done and the bone was reset and ultimately a union was formed. But the mended bone was not straight and the arm was crooked and stiff and McDonnell was unable to use it as much or as efficiently as before the accident. Thereupon, claiming negligence on the part of the defendant, he brought this action for damages. In his complaint he set out the fact of the accident and injury; his employment of the defendant as a physician and surgeon; that the defendant had negligently and unskillfully treated the arm; that by reason of such negligence and lack of skill he suffered additional pain, was put to great inconvenience, caused to incur additional expense for medical and professional care, and his arm was permanently crippled. The defendant, answering, admitted he was employed to treat the plaintiff but denied any negligence on his part. He further alleged that he had used and exercised reasonable and proper professional skill and care and that if the plain-

tiff suffered any damage and injury by reason of an unfavorable result the same ensued because of negligence on the part of the plaintiff in failing to follow directions with respect to the use and care of the arm. The case was tried to a jury. The plaintiff had a verdict. The defendant having laid the proper foundation therefor, moved for judgment notwithstanding the verdict or for a new trial. The court granted the motion for judgment notwithstanding the verdict and judgment was entered accordingly in favor of the defendant. Plaintiff now appeals.

The plaintiff contends that the record establishes negligence on the part of the defendant in the reduction of the fracture and the setting of the bone; that even if there was no negligence in the first instance that there was in the treatment of the injury after the bone had been set; that as a proximate result and consequence of such negligence the plaintiff suffered damage so as to warrant the verdict returned. On the other hand, the defendant insists that the record fails to establish any negligence on his part either in the first instance or in the subsequent treatment of the case; that even though a finding of negligence is warranted by the record, there is no evidence that such negligence resulted in any damage or injury to the plaintiff; that the plaintiff himself was guilty of contributory negligence in failing to observe the directions given to him by the defendant as to the use and care of the injured arm.

There is much conflict in the testimony with respect to both the questions of negligence and contributory negligence. But the plaintiff had a verdict and in considering the propriety of the court's action in granting the motion for judgment notwithstanding we must accept that version of the facts sustainable on the record which is most favorable to the plaintiff. Stoskoff v. Wicklund, 49 N. D. 708, 193 N. W. 312.

In considering the questions presented on this appeal we must do so in the light of certain well established rules which it may be advantageous to state at this time. First, the burden is on the plaintiff to establish by competent evidence actionable negligence on the part of the defendant and damages proximately resulting therefrom. Stoskoff v. Wicklund, supra; Ramberg v. Morgan, — Iowa, —, 218 N. W. 492; Holton v. Burton, 197 Wis. 405, 222 N. W. 225. Next, a physician is required to exercise only such reasonable and ordinary care, dili-

gence and skill in treating his patient as are ordinarily possessed and exercised by physicians practicing in similar localities in the same general line of practice. Dolan v. O'Rourke, 56 N. D. 416, 217 N. W. 666; Whitson v. Hillis, 55 N. D. 797, 215 N. W. 480; Hanson v. Thelan, 42 N. D. 617, 173 N. W. 457. A patient cannot recover in an action against his physician for damages for malpractice if he has not conformed to all reasonable directions of such physician or if his conduct has contributed to the injury upon which the action is based. Hanson v. Thelan, supra. In the absence of evidence to the contrary it will be presumed that a physician and surgeon in treating his patient exercised a reasonable degree of care and skill. Schmidt v. Stone, 50 N. D. 91, 194 N. W. 917. A physician is not liable for malpractice merely because of a bad result and is not an insurer of a correct diagnosis or correct treatment. Gallagher v. Kermott, 56 N. D. 176, 216 N. W. 569; Schmidt v. Stone, supra; Dolan v. O'Rourke, 56 N. D. 416, 217 N. W. 666; Dean v. Seeman, 42 S. D. 577, 176 N. W. 649; Feltman v. Dunn, 52 S. D. 187, 217 N. W. 198; Clark v. George, 148 Minn. 52, 180 N. W. 1011; Miller v. Toles, 183 Mich. 252, L.R.A.1915C, 595, 150 N. W. 118. Where the proofs disclose that one of several proximate causes might have been responsible for the result complained of and the jury can only conjecture or speculate as to which was the cause of such result, a verdict for damages therefor cannot be sustained. Gallagher v. Kermott, 56 N. D. 176, 216 N. W. 569; Ramberg v. Morgan, — Iowa, —, 218 N. W. 492; Gamradt v. Du Bois, 176 Minn. 312, 223 N. W. 296.

Viewing the record in the light of the foregoing rules, was the trial court justified in ordering judgment for the defendant notwithstanding the verdict?

Without doubt the plaintiff suffered a fracture of the bone of his lower right arm in the manner set forth in his complaint. Nor is there any doubt but that he employed the defendant to attend to his injury for him. Neither can it be disputed that there was no union of the fractured bone until after another physician had been employed and had operated upon the arm, opened up the soft tissue, removed loose fragments of bone and again reduced the fracture. Our first inquiry now is as to whether, taking the view of the evidence most favorable to the plaintiff, the defendant can be said to have been guilty of negli-

gence in his treatment of the case, either in the original treatment or in the care of the arm thereafter. The fracture was a comminuted fracture. It was in the lower third of the radius. It was not squarely across the bone but obliquely. The fracture was difficult to reduce and set. First because of the injuries to the soft parts of the arm, the burning and laceration of the skin and tissue, and, second, because of the pull of the muscles which tended to displace the bone after the fracture was reduced. The most important matter in the first instance was to care for the arm and see that there was no infection. On that account it was necessary to dress the burn and other wounds daily and so it was not possible to set the arm in a stiff cast or bind the splints as tightly as would otherwise have been good practice. We think the record establishes that the treatment administered by the defendant in the first instance was proper and consistent with the care and skill reasonably required and applied in similar cases under similar circumstances.

But the defendant's duty to exercise reasonable care and skill did not cease with the first treatment. And the plaintiff contends that even though there was no negligence in the first instance, nevertheless the defendant was negligent in his subsequent care and treatment of the arm. The plaintiff's testimony is that he went daily to the defendant who took off the splints and dressed the arm. Plaintiff continually complained that the arm pained him greatly and that he could feel the grating of the ends of the broken bone. Notwithstanding these complaints the doctor assured him that the arm was in proper condition and was all right. The doctor did not make any attempt to examine as to the fracture and determine by palpation or otherwise whether the parts of the bone were in proper position. He had no X-ray and did not suggest to the plaintiff that under the circumstances the proper thing to do was to use an X-ray. There is expert testimony to the effect that since at first the most important treatment was of the burn and other open wounds to prevent infection, on that account it was not good practice to tightly bandage the arm with splints or otherwise. Further, on account of the cross-pull of the muscles there was danger of misplacement of the bone after it had been properly set. Therefore, extra precautions were essential to guard against misplacement. Ordinarily, the pain attendant on a fracture does not continue for more

than 72 hours after the reduction and setting, and pain for a longer period is a symptom indicating that the parts are not in proper position and are not uniting, though it may indicate other adverse conditions as well. And the continued grating of the broken ends of the bone indicates a nonunion. So with these symptoms proper practice required an investigation either by palpation or through use of the X-ray to determine whether the parts of the bone were in correct position and were uniting, and if they were not, so much time having elapsed since the fracture, a resort to surgery. Of course the defendant was not an insurer of a correct diagnosis or correct treatment, but he was required to use reasonable care and skill in both diagnosis and treatment. So if he had notice of such facts as should have put him on inquiry as to the character of the fracture and the condition of the bone and then failed to use reasonable care and skill in diagnosis and treatment, he became responsible. We conclude that there was a question for the jury as to whether the defendant was negligent.

The next question is as to whether the plaintiff himself was guilty of contributory negligence in failing to observe reasonable directions given to him by the defendant as to the care he should give his arm and the use he might make of it while it was under treatment. With respect to these matters as with respect to many others there is an abrupt conflict in the testimony. But the question of contributory negligence was submitted to the jury by the court. Plaintiff's evidence was to the effect that he had observed and followed the directions that were given him regarding the care and use of the arm. We are not able to say that the verdict of the jury that there was no contributory negligence is not sustained by the record.

If the defendant was negligent either in diagnosis or treatment, and the plaintiff himself was not guilty of contributory negligence, did the nonunion of the fractured bone result proximately on account of such negligence and did the plaintiff thereby suffer damages in the various respects as claimed by him? The expert testimony is that nonunion might result from various causes, such as malposition of parts of the bone or the interposition of fragments of bone or muscle between the parts, or disease. In some individuals it is impossible to secure the union of a fractured bone regardless of the care and skill employed in its treatment. Here it appears that there were both malposition and

loose fragments of bone between the larger parts. In such case proper treatment requires a resort to surgery, an opening up of the arm, the removal of the fragments of bone and a resetting. This was the treatment which was ultimately given to the arm and when this was done a union of the bone resulted. It therefore seems clear that there was a question for the jury as to whether the nonunion following the defendant's treatment resulted because of his failure to exercise proper care and skill under all the conditions and circumstances.

Proof of injury and damage must be reasonably definite and certain and must warrant more than mere conjecture or speculation. So where one of several proximate causes might have been responsible for a result and the jury can only conjecture or speculate as to which was the cause of such result, a verdict for damages therefor cannot be sustained.

In the instant case the plaintiff claims to recover for pain suffered, for inconvenience caused, for additional expense for medical and professional care, and for permanent injury and disability. The expert testimony is that considering the location and character of the fracture, permanent disability and impairment of the arm might have resulted even though the treatment was skillful and proper care was exercised by the defendant. Unquestionably there was some permanent impairment and disability, but since, in any event, such might have resulted regardless of negligence, and there is no evidence that it would not have done so, the plaintiff cannot claim a recovery therefor. However, it is fairly inferable from the record that there was additional pain and suffering, inconvenience, and expense because of the failure of the fractured bone to unite. These items then are items for which the plaintiff would be entitled to recover and thus the case was properly for the jury. This being so the court erred in ordering judgment notwithstanding the verdict.

This matter was presented to the trial court on motion in the alternative for a new trial or for judgment notwithstanding the verdict. As evidenced by his order and by his memorandum written at the time of making the order, the trial court was of the opinion that the verdict as returned ought not to stand because of failure of proof both of negligence and of its proximate consequences. He was so strongly of this opinion that he ordered judgment for the defendant notwithstanding

the verdict. As we have shown above he erred in so doing. However, we have considered the record carefully and are of the opinion that he should have granted a new trial.

Since a new trial is necessary it is proper that a point which arose in the record, was urged in support of the motion in the court below, and which may arise in the event of a new trial, be now considered and disposed of. The surgeon who was last consulted by the plaintiff and who operated upon and reset the arm, was called as a witness in his behalf. He was examined as to what he had done in the way of treatment. His answer was he had diagnosed the case; had resorted to surgery and opened up the arm; had removed two loose fragments of bone which lay in the fracture; had scraped the broken ends of the bone and reset it; and that the bone had thereafter formed a union and healed. Asked by plaintiff's counsel as to whether after the treatment "Did you leave him better or worse than when you got him," the surgeon answered, "A little better—started on a better road. After the healing of the bone began—after that time, the improvement started and will continue for a year or more." Thereafter this surgeon was called as a witness for the defendant who sought to elicit from him testimony with respect to the condition of the arm as he found it when he first examined it, and later when he performed the operation, and his conclusion as to the cause of the condition and the effect thereof. This testimony was objected to on the part of the plaintiff on the ground the knowledge the surgeon had thus acquired was privileged because of the relationship of physician and patient which existed between him and the patient, and the objection was sustained. This objection was predicated upon the provisions of the statute, ¶ 3, § 7923, Comp. Laws 1913:

"A physician or surgeon cannot, without the consent of his patient, be examined as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." The privilege is wholly statutory. Booren v. McWilliams, 26 N. D. 558, 145 N. W. 410, Ann. Cas. 1916A, 388; Forrest v. Portland R. Light & P. Co. 64 Or. 240, 129 Pac. 1048; 4 Wigmore, Ev. § 2380; Jones, Ev. § 2195. And it may be waived. See Comp. Laws 1913, § 7924; Forrest v. Portland R. Light & P. Co. 64 Or. 240, 129 Pac. 1048, supra; 4 Wigmore, Ev. § 2388; 28 R. C. L. 542, et seq.; 40

Cyc. 239, et seq. When the plaintiff called this witness and examined him as he did as to the condition of the arm at the time he treated the plaintiff, he thereby waived the privilege and made it possible for the defendant to examine fully and at length as to all relevant matters with respect to the condition of the arm. See Epstein v. Pennsylvania R. Co. 250 Mo. 1, 156 S. W. 699, Ann. Cas. 1915A, 423, 48 L.R.A. (N.S.) 394, and note; Marquardt v. Brooklyn Heights R. Co. 126 App. Div. 272, 110 N. Y. Supp. 657; Powers v. Metropolitan Street R. Co. 105 App. Div. 358, 94 N. Y. Supp. 184; 4 Wigmore, Ev. § 2390; Jones, Ev. § 2195; 40 Cyc. 2402, and cases cited; 28 R. C. L. 545, and cases cited. In Powers v. Metropolitan Street R. Co. 105 App. Div. 358, 94 N. Y. Supp. 184, supra, an action for damages for personal injuries, the plaintiff called a physician to testify as to an examination made immediately after the accident and the condition then existing. Thereafter the defendant called the same physician to testify as to plaintiff's subsequent condition resulting from the accident. The plaintiff objected to this latter examination on the ground that the information was privileged. The objection was sustained. On appeal the supreme court held that the plaintiff had waived his privilege by calling the physician in the first instance and that the objection should have been overruled, saying:

"Plaintiff saw fit to rely upon the doctor to testify as to the examination made immediately after the accident, and the condition then existing. Having done this he could not close the doctor's lips as to a condition existing subsequent thereto, when that condition, according to his own claim, resulted from those injuries. The plaintiff could not sever his privilege so as to waive it in part and retain it in part. Having once waived it upon the trial, it then ceased to exist, either partially or entirely, at least so far as that trial was concerned."

The judgment of the district court is reversed and a new trial ordered.

BURKE, Ch. J., and BURR, BIRDZELL and CHRISTIANSON, JJ., concur.