215 So.2d 753 (1968)
SOUTHERN FLORIDA SANITARIUM AND HOSPITAL, INC., a Florida Corporation, d/b/a Hialeah Hospital, Appellant,
v.
Edgar V. HODGE and Pauline L. Hodge, Husband and Wife, Appellees.
No. 68-365.
District Court of Appeal of Florida. Third District.
November 26, 1968.
Taylor, Brion, Buker, Hames & Greene and James F. Dougherty, Miami, for appellant.
Frates, Fay, Floyd & Pearson and Larry S. Stewart, Miami, for appellees.
Before CHARLES CARROLL, C.J., and HENDRY and SWANN, JJ.
PER CURIAM.
Appellee Pauline L. Hodge filed an action against the appellant, charging negligence resulting in illness and injury for *754 which she sought damages. The appellee Edgar V. Hodge, her husband, joined in the action, seeking derivative damages. The appellant, the defendant below, answered denying negligence and pleading contributory negligence. Trial of the cause before a jury resulted in a verdict in favor of the appellee Pauline Hodge for $5,000 and in favor of the appellee Edgar Hodge for $296.96, and judgment was entered thereon. The defendant appealed, asserting insufficiency of the evidence to support the verdict and judgment, and errors in rulings of the court during the course of the trial.
The record discloses that Pauline Hodge, under direction of her physician, entered the defendant's hospital for certain diagnostic testing in which it was necessary to inject certain liquid into her arm, and thereby into her blood stream. Shortly thereafter an infection occurred in her arm, developing into thrombophlebitis. The determinative issue, as submitted by the trial judge in his charge to the jury, was "whether the defendant was negligent in the medical procedure set forth in the complaint, and if so, whether such negligence was the legal cause of the injury sustained by the defendant."
On consideration of the record we are unable to agree with the appellant's contentions that the evidence was insufficient to support the verdict. The plaintiff presented a doctor whose testimony regarding the process involved included a statement that the accepted medical standard requires that sterility be maintained throughout the injection procedure, and that where this standard is not departed from, infectious thrombophlebitis would not occur; but that it could occur from a failure to maintain sterility in the process. Moreover, the jury was entitled to conclude as a matter of their own common knowledge that infection could result from non-sterility in such injection process. See Atkins v. Humes, Fla. 1959, 110 So.2d 663, 81 A.L.R.2d 590; Montgomery v. Stary, Fla. 1955, 84 So.2d 34.
On the showing that the process was under control of the hospital through its employees, the trial court was justified in submitting the case to the jury on the doctrine of res ipsa loquitur, West Coast Hospital Ass'n v. Webb, Fla. 1951, 52 So.2d 803; South Florida Hospital Corp. v. McCrea, Fla.App. 1959, 112 So.2d 393; South Florida Hospital Corp. v. McCrea, Fla. 1960, 118 So.2d 25; Williams v. Orange Memorial Ass'n, Fla.App. 1967, 202 So.2d 859; and since there was some evidence from which specific negligence through failure to maintain sterility reasonably could have been inferred,[1] it was also proper to submit the case to the jury on evidence of specific negligence. See National *755 Airlines, Inc. v. Fleming, Fla.App. 1962, 141 So.2d 343; South Florida Hospital Corp. v. McCrea, supra; McKinney Supply Company v. Orovitz, Fla. 1957, 96 So.2d 209, 211.
We have also considered appellant's contention relating to certain rulings on evidence at trial in the light of the record and briefs, and we conclude no reversible error has been shown therein.
Affirmed.
NOTES
[1] For example, defendant's chief of staff was asked on cross-examination: "Is it the hospital's practice to have the people who are administering this type of matters to clean their hands in such a manner as to remove any bacteria that would be on there, infectious bacteria that would be on there? A. I really do not know. I have never watched them do it, but I assume that they do not, but I really do not know." Also, Dr. Monyek testified that the puncture or wound was not covered to protect it from infection which could occur from being touched or from exposure to the air, as follows: "It is my opinion that the source of infection for the infectious thrombophlebitis that I diagnosed in Mrs. Hodge occurred because of a break in the required sterile proceedings in the preparation, introduction, administration or removal and its subsequent protection of the Pyelographic Mannitol Concentration Test. * * * It is my opinion that the infection was introduced during the withdrawal and subsequent to this withdrawal of the needle. Q. Now, you have already told us infection could occur from the air. A. Yes, sir. Q. Can an infection occur from the touch of the skin to an open wound? A. If the skin is infected that touches the wound. * * * Q. Now, were you told by Mrs. Hodge as to whether or not a Bandaid was put on this wound? A. Yes, sir. Q. What were you told, sir? A. I was told there were no dressings placed on this wound. Q. At any time? A. At any time subsequent to the removal of the needle."