Richard **DEMARAY** by his Guardian Winona Demaray and Winona Demaray, Individually and as Guardian for Kelly Demaray, et al., Plaintiffs-Appellees,

v.

Doug **RIDL**, Defendant-Appellant,

and

Ed Sadowsky, Defendant.

Civ. No. 9244.

Supreme Court of North Dakota.

Dec. 23, 1976.

L. E. Greenwood, Dickinson, for Doug Ridl, defendant and appellant; argued by M. L. Greenwood, Dickinson.

Lundberg, Nodland & Schulz, Bismarck, for plaintiffs and appellees; argued by Irvin B. Nodland, Bismarck.

Pearce, Anderson, Pearce, Thames & Pearce, Bismarck, for Edward Sadowsky, defendant.

PAULSON, Judge.

This appeal is from an order dated April 5, 1976, of the District Court of Stark County, granting plaintiffs' [hereinafter the Demarays] motion for a new trial as against the defendants Henry S. Dvorak and Doug Ridl. The Demarays also made an alternative motion for judgment notwithstanding

the verdict but the motion was denied on the basis that the Demarays had failed to make a motion for a directed verdict. Only Ridl has appealed from the order of the district court granting a new trial.

The Demarays commenced a wrongful-death action, pursuant to Chapter 32–21, N.D.C.C., against the defendants Henry S. Dvorak, Ed Sadowsky, and Doug Ridl, following an automobile accident which occurred in the forenoon of December 19, 1974, in which Flora Demaray, wife of Richard Demaray, received severe injuries which resulted in her death shortly thereafter as a direct result of said accident. Flora Demaray was driving an automobile on Highway 22, proceeding in a northerly direction from Dickinson. She was accompanied by her sister, Lois Linder, who was a passenger in the front seat of the Demaray automobile. Some distance ahead of the Demaray vehicle was a semitruck, the owner or the driver of which has never been ascertained. Three vehicles were proceeding in a southerly direction on Highway 22 at approximately the same time, at a point about five miles north of Dickinson.

The first of the three southbound vehicles was driven by the defendant Ridl, the appellant herein. He intended to make a left-hand turn across the northbound lane of the highway, into a private road leading to his father's farm, which was located just east of Highway 22 and approximately five miles north of Dickinson. Ridl stopped his vehicle in the southbound lane to wait for the northbound traffic to clear, in order that he could make a left-hand turn. Ridl testified that he had turned on the left turn signals of his vehicle prior to stopping, but testimony by Sadowsky indicated that the rear lights of Ridl's vehicle were covered with snow and were not visible to drivers approaching Ridl's vehicle from the rear. Specifically, Ridl was waiting for the northbound semitruck to pass. About fifteen hundred feet immediately north of the Ridl vehicle there was a slight hill over which Ridl had just driven, prior to bringing his vehicle to a stop in anticipation of making a left-hand turn.

Behind Ridl's stopped vehicle was the southbound vehicle driven by Sadowsky, who was also a defendant in the trial of this action. At some point within the fifteen hundred feet after cresting the top of the hill, Sadowsky was able to see the Ridl vehicle, recognize that it was either stopped or moving slowly, and bring his own vehicle to a stop ten to fifteen feet behind the stopped Ridl vehicle.

The third southbound vehicle, a truck, driven by Dvorak, also crested the same hill, but he was unable to bring his truck to a stop before crashing into the rear of the stopped Sadowsky vehicle. Dvorak testified that he did not have sufficient time after he saw the Sadowsky vehicle's brake lights come on to stop his truck. Because of the presence in the northbound lane of both the semitruck and the Demaray vehicle, it was not possible for the southbound Dvorak to use the northbound lane to avoid hitting the stopped Sadowsky and Ridl vehicles.

Dvorak, in his attempt to avoid the rear-end collision with Sadowsky's vehicle, braked his truck, causing it to skid. Dvorak's vehicle at the time of impact with the rear end of the Sadowsky vehicle, had skidded over into the northbound lane. The northbound semitruck had just safely passed and proceeded beyond the three vehicles in the southbound lane, but the northbound Demaray vehicle, traveling immediately behind the semitruck, crashed into that portion of the Dvorak truck which had skidded six to ten feet into the northbound lane.

The semitruck continued traveling northward without stopping, the driver apparently unaware of the accident which then occurred.

The Demarays allege that the accident and the fatal injuries sustained by Flora Demaray were caused by the negligence, jointly and severally, of each of the three defendants—Dvorak, Sadowsky, and Ridl. The case was tried to a jury which returned a special verdict wherein it awarded damages to the Demarays in the amount of $37,983.00. In specifying the amount of

negligence attributable to each of the parties, however, the jury assigned fifty per cent negligence to the defendant, Dvorak, and fifty per cent negligence to Flora Demaray, the decedent; and found that defendants Sadowsky and Ridl were not negligent. Accordingly, under the North Dakota comparative negligence statute (§ 9–10–07, N.D.C.C.), the Demarays did not recover any damages.

The Demarays made a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The trial court in its memorandum decision granted the motion for a new trial as against the defendants Dvorak and Ridl, and vacated the verdicts and judgments in their favor. The grounds for such order were:

(1) that the evidence is wholly insufficient and in fact nonexistent to justify a finding that the decedent was negligent to the extent of fifty per cent;

(2) that the bailiff had improper communication with the jurors; and

(3) that the leaving of Volume 74 of the North Western Reporter Second in the jury room, which volume was opened to the case of *Geier v. Tjaden,* 74 N.W.2d 361 (N.D.1955), a wrongful-death action, constituted prejudicial error.

Ridl contends that the aforesaid grounds constitute an insufficient basis for the trial court to order a new trial as against Ridl. We disagree.

First, we note that orders of the trial court granting or denying a new trial rest largely in the discretion of the trial court. *Smith v. Michael Kurtz Construction Company,* 232 N.W.2d 35, 37 (N.D. 1975); *Wrangham v. Tebelius,* 231 N.W.2d 753, 756 (N.D.1975), and cases cited. Further, we note that this court will more readily affirm a granting of a new trial than a denial of one, since such order granting a new trial does not make final determination of the case. *Wrangham v. Tebelius, supra* 231 N.W.2d at 756; *Stein v. Ohlhauser,* 211 N.W.2d 737, 742 (N.D.1973); *Nokota Feeds, Inc. v. State Bank of Lakota,* 210 N.W.2d 182, 187 (N.D.1973); and the development of the law stated in the dissent in *Muhlhauser v. Archie Campbell Construction Co.,* 160 N.W.2d 524, 531 (N.D.1968).

In *Wrangham v. Tebelius, supra* 231 N.W.2d at 754, in paragraphs 1, 2, 3, and 4 of the syllabus, this court stated:

"1. When it appears to the trial court that the verdict is against the weight of the evidence, it is the duty of that court to set aside the verdict and to grant a new trial.

"2. The granting of a motion for a new trial upon the ground of the insufficiency of the evidence will not be disturbed on appeal unless a manifest abuse of discretion appears.

"3. In an appeal from an order granting a new trial on the ground of insufficiency of the evidence to support the verdict, the appellant has the burden of showing that the trial court erred and that the *granting* of the new trial was a manifest abuse of the trial court's discretion.

"4. A stronger showing is required to reverse an order granting a new trial than to reverse an order denying one."

In the instant case, the trial court granted the Demarays' motion for a new trial, pursuant to Rule 59(b), N.D.R.Civ.P., on three separate grounds, each requiring separate treatment.

## I. INSUFFICIENCY OF THE EVIDENCE

Rule 59(b)(6), N.D.R.Civ.P., provides:

"*(b) Causes for new trial.* The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

.   .   .   .   .

"6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against law;"

In the instant case, the jury, in a special verdict, assessed damages to the Demarays

in a total amount of $37,983.00, but attributed to Flora Demaray fifty percent of the negligence responsible for causing the accident which led to her death and, thus, pursuant to such verdict, under North Dakota's comparative negligence law (§ 9–10–07, N.D.C.C.), the Demarays recovered nothing.

The trial court, in its memorandum opinion granting a new trial, stated:

"The state of the evidence in this case rendered it legally impossible for a jury to find that the decedent was guilty of fifty percent of the negligence that caused the collision. There is no evidence to justify or warrant such a finding. . . . The Plaintiffs established and proved a very meritorious cause of action. They were entitled to substantial damages. The finding of the Jury in this case as to the percentage of negligence nullifies their verdict. This constitutes a flagrant miscarriage of justice."

A perusal of the record finds this court in agreement with the trial court— the evidence is wholly insufficient and, in fact, nonexistent to justify a finding that Flora Demaray was negligent to the extent of fifty per cent. We note Ridl's testimony that Flora Demaray may have failed to maintain a safe distance behind the semi-truck, and we also note Dvorak's testimony that she may have been driving close to the center line of the highway; but we also note that, even if true, neither factor was a factual cause of the accident, which occurred when the rear end of the southbound Dvorak truck skidded six to ten feet into Flora Demaray's northbound lane of traffic. Further, the facts in this case give rise to the rebuttable presumption that, because of the instinct of self-preservation, one who has suffered death by accident was at the time of the injury exercising due care for his own safety. *Thompson v. Nettum,* 163 N.W.2d 91, 96–97 (N.D.1968), and cases cited.

We find, in the instant case, that the trial court properly exercised its discretion in granting a new trial, pursuant to Rule 59(b)(6), N.D.R.Civ.P.

## II. IMPROPER COMMUNICATION WITH THE JURY

Rule 59(b)(1), N.D.R.Civ.P., provides that a new trial may be granted on the application of the party aggrieved in the event of:

"1. Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;"

In the instant case, during deliberation by the jury, one of the bailiffs was told by one of the jurors that the jury wished to ask the trial judge a question. Instead of calling the judge and informing him of such request, the bailiff told the juror that in order for the jury to talk to the judge it would be necessary that the judge and the attorneys for each of the parties be present in court. The bailiff told the juror that since the judge had just left for supper and the attorneys for the parties were gone, the jury should talk their question over among themselves and work it out—that then, if the matter was still not resolved, the question could be taken care of later, after supper. The exact nature of the jury's question at that time is unknown. The bailiff stated that another member of the jury later told him that she thought that the two forms of the verdict were in conflict. The bailiff, in his affidavit, stated that his response to her was that:

"If you refer to the Instructions toward the end they state that you have two forms of verdict, but one is to be filled out."

In neither instance did the bailiff inform the trial judge that the jury had had a question and, in the second instance, the bailiff took it upon himself to refer the juror to the court's instructions. The jurors then resolved the questions on their own and brought in the verdict which is the subject of this appeal.

Ridl contends that such actions by the bailiff resulted in no prejudice to the Demarays. In support of his contention, Ridl cites *Tschosik v. Meier,* 110 N.W.2d 97, 99 (N.D.1961), in which this court found no

prejudice to have resulted when the trial judge made a similar statement to the jury as the bailiff did in the instant case.

This court notes two distinctions between the facts in *Tschosik* and the facts in the instant case. First, in *Tschosik,* it was the trial judge—not the bailiff—who made the decision not to give the jury further instruction or clarification; and, second, on appeal, this court found the evidence in *Tschosik* sufficient to support the verdict. However, in the instant case, we find the evidence insufficient to support the jury's verdict.

Section 28–14–18, N.D.C.C., provides in pertinent part:

> "*Conduct of jurors in retirement.—* . . . Unless, by order of the court, the officer having the jurors under his charge must not suffer any communication to be made to them, or to make any himself except to ask them if they have agreed upon a verdict, and he, before the verdict is rendered, must not communicate to any person the state of their deliberations or the verdict agreed upon. . . ."

In *James Turner & Sons v. Great Northern Ry. Co.,* 67 N.D. 347, 272 N.W. 489, 505 (1937), in considering the same statutory language, this court said:

> "To keep the conduct of the jurors and verdict above suspicion, the law should be strictly followed. . . .
>
> "This is a plain, mandatory statute and the officer in charge must not suffer any communications to be made to the jurors and he must not speak to them himself except to ask them if they have agreed upon a verdict."

Further, § 28–14–19, N.D.C.C., provides:

> "*Additional information as to law.—* After the jurors have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed of any point of law arising in the case, *they may require the officer to conduct them into court.* Upon their being brought into court the information required must be given in the presence of or after notice to the parties or counsel." [Emphasis added.]

▮ In the instant case, the bailiff failed to comply with the provisions of § 28–14–19, N.D.C.C., requiring the bailiff to bring the jury into court for answers to their questions; and the bailiff violated § 28–14–18, N.D.C.C., by communicating with the jury in a manner proscribed by § 28–14–18. We find such actions on the part of a bailiff to be a competent basis upon which a trial court might grant a new trial, pursuant to Rule 59(b)(1), N.D.R.Civ.P.

## III. PREJUDICIAL MATERIAL IN THE JURY ROOM

▮ In the instant case, a law book—Volume 74 of the North Western Reporter Second—was inadvertently left on a table in the jury room, which volume was opened to the case of *Geier v. Tjaden,* 74 N.W.2d 361 (N.D.1955), a wrongful-death case. The law book had been left in the jury room by the trial judge and the attorneys following a conference in which they were discussing jury instructions to be given in the instant case. The bailiffs overlooked removing the law book from the jury room because, just prior thereto, the bailiffs had removed from the jury room numerous other volumes of law books stored therein and thought that they had completed their task. An affidavit submitted by the jury foreman indicated that the law book was immediately closed, set aside, and not referred to by the jury during its deliberation. The trial court found the foregoing to constitute prejudicial error and to entitle the Demarays to a new trial.

Section 28–14–17, N.D.C.C., provides:

> "*What papers jurors may take.—*Upon retiring for deliberation, the jurors may take with them all papers which have been received as evidence in the cause except depositions or copies of such papers as ought not in the opinion of the court to be taken from the person having them in possession, and they also may take with them notes of the testimony or

other proceedings on the trial taken by any juror, but none taken by any other person."

In *King v. Railway Express Agency, Inc.,* 94 N.W.2d 657, 660 (N.D.1959), this court stated:

"There is no provision in the law that permits giving to the jurors any instruments or articles that have not been admitted as exhibits or used as instruments in explaining exhibits . . . ."

It is clear both from statutory and case law that the jury in its deliberation is to consider nothing in the jury room other than that which has been received as evidence or the jurors' own notes; but it does not follow that the presence in the jury room of unauthorized items automatically requires a reversal or a new trial. In the case of law books present in a jury room, the general rule has been that a jury's access to law books during its deliberation—without actual use of such books—is not such misconduct as will vitiate the verdict. Annot. 54 A.L.R.2d 710, 714 (1957). However, in the instant case, even though the presence of a law book in the jury room is not grounds for a new trial per se, we find, because the law book was opened to a wrongful-death case—and the present case under consideration by this jury was also a wrongful-death case—that it was wholly within the trial court's discretion to find the law book's presence in the jury room to be prejudicial error and to entitle the Demarays to a new trial, without requiring a showing that the law book was used by the jury.

Finally, Ridl contends that even if the discretion of the trial court was exercised properly in granting a new trial to the Demarays, the trial court abused such discretion in granting the new trial as against Ridl because, as a matter of law based upon the facts adduced at the first trial of the action, the Demarays have shown no right to relief from Ridl. Ridl appears to be arguing that since the car immediately behind him was able to see the Ridl vehicle and come to a safe stop behind the Ridl vehicle, he, Ridl, was thenceforth absolved from all responsibility for signaling to other vehicles. We disagree.

In the instant case, the accident would not have occurred but for the fact that Ridl stopped his vehicle in the middle of the traveled portion of the southbound lane of North Dakota Highway 22, while waiting to negotiate a left-hand turn into the private road leading to his father's farm. Ridl testified that he turned on his turn signals at least fifteen hundred feet before he came to a stop, because:

". . . the conditions being what they were, I thought I would have to look out for the other guy so I was being very, very careful that day."

Ridl had earlier testified that:

"Well, I just felt that since the road was icy, that it was slick, that a lot of care was required in driving."

However, both Dvorak and Sadowsky testified that they never saw Ridl's turn indicator or his brake lights. Sadowsky testified that although he was able to bring his vehicle to a safe stop after recognizing that Ridl was either moving slow or stopped, he was unable to see Ridl's turn indicator and Ridl's brake lights because the rear of the Ridl vehicle was covered with snow. Dvorak testified that he didn't even see the Ridl vehicle—presumably because the Sadowsky vehicle hid the Ridl vehicle from view or because the Ridl vehicle was engulfed by swirling snow caused by the passing of the northbound semitruck coming abreast of the stopped Ridl vehicle in the southbound lane. Dvorak first became aware that he needed to stop or slow down when he saw the Sadowsky vehicle brake lights come on.

The applicable statute at the time this action arose, § 39–10–38, N.D.C.C. [S.L. 1955, ch. 237, § 39], provided in pertinent part:

"*Turning movements and required signals.*—1. No person shall . . . turn a vehicle to enter a private road or driveway . . . unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal

in the manner hereinafter provided in the event any other traffic may be affected by such movement;

"2. A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning; . . . "

Such required signals are for the benefit of all vehicles and pedestrians potentially affected thereby. In the instant case, Ridl had a duty to signal his intention to make a left-hand turn not only to Sadowsky, the driver of the vehicle immediately to Ridl's rear, but also to the driver of the semitruck and Flora Demaray and Dvorak.

The fact that the vehicle making a turn (Ridl's) is not itself involved in the accident does not avoid liability on its driver's (Ridl's) part if the jury finds that something the driver of the vehicle making the turn did or failed to do was the proximate cause of the accident. Annot. 39 A.L.R.2d 103, §§ 12, 20 (1955). In the instant case, nothing in the record of the trial of this action would prevent a jury from concluding that Dvorak might have been able to bring his truck to a safe stop, had Dvorak, as soon as he crested the hill overlooking the scene of the accident, been able to see the flashing red light of Ridl's turning signal or the bright red lights of Ridl's braking signal. The fact that Dvorak could not see the Ridl vehicle when its taillights were obstructed by snow does not mean that it would have been impossible for Dvorak to have seen the Ridl vehicle had its taillights been free of snow, even if the Ridl vehicle were partially hidden by the Sadowsky vehicle or obstructed by the swirling snow caused by the passing of the semitruck.

Since it is for the jury to determine whether or not Ridl's failure to clear his vehicle's taillights of accumulated snow on the day of the accident proximately caused the accident—in full or in part—or whether the accident was caused solely as the result of other independent causes, the trial court properly exercised its discretion in granting a new trial as against Ridl.

The order of the district court granting a new trial is affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.