**Leslie R. WASEM and Lenora Wasem, Plaintiffs and Appellants,**

**v.**

**E. J. LASKOWSKI, K. G. Foster, and Quain and Ramstad Clinic, a partnership, Defendants and Appellees.**

**Civ. No. 9460.**

Supreme Court of North Dakota.

Jan. 8, 1979.

Freed, Dynes, Malloy & Reichert, Dickinson, and Mandel & Stiegler, Minneapolis, Minn., for plaintiffs and appellants; argued by Alan Stiegler, Minneapolis, Minn.

Fleck, Mather, Strutz & Mayer, Bismarck, and Nilles, Hansen, Selbo, Magill & Davies, Fargo, for defendants and appellees; argued by William A. Strutz, Bismarck.

PEDERSON, Justice.

This is an appeal by Mr. and Mrs. Wasem from a judgment dismissing a medical malpractice claim against Dr. Laskowski, Dr. Foster, and the Quain and Ramstad Clinic. The appeal is also from an order denying a motion for new trial.

The trial record includes 16 volumes of transcript, plus numerous depositions and exhibits. Although a very complex medical question is involved, the only issues raised on this appeal relate to the failure to give requested jury instructions. Mr. and Mrs. Wasem claim that they were entitled to specific instructions that:

(1) It is prima facie evidence of negligence when a doctor deviates from a drug manufacturer's instructions;

(2) The jury may infer from an injury and the circumstances surrounding it that the doctor failed to exercise proper skill and care; and

(3) The doctor had an obligation and duty to inform the patient when an abnormal condition developed.

Wasem visited the Quain and Ramstad Clinic in Bismarck in April 1973. He was suffering from neck pains and recurring numbness of the right arm and hand. He had previously consulted doctors in Dickinson. Dr. Laskowski performed a myelogram by injecting Pantopaque dye into Wasem's spinal canal. This diagnostic test uses the dye as a contrast medium for observing the interior of the spinal canal on the fluoroscopy screen and on x rays. When the test was completed, the dye did not flow back out of the needle and no effort was made to remove the dye at that time. In the months that followed, severe paralysis of the lower extremeties occurred, allegedly caused by an inflammation and scarring of the arachnoid membrane in the spinal canal.

Wasem contended that, when conducted properly, a Pantopaque myelogram is a harmless test and that removal of the dye is the only way to properly conduct the test. He further contended that adhesive arachnoiditis resulted from a toxic reaction to the dye and that the paralysis resulted therefrom. He further contended that, even though the results may have been extremely rare, the doctors failed to fulfill their obligation to inform him of the abnormal condition.

1. *Prima Facie Evidence.*

Wasem requested, and the court refused to give, the following instruction:

"Plaintiff's Requested Instruction No. 8

"If a manufacturer recommends conditions for the use of a drug, precautionary measures which should be observed, and warns of dangers inherent in its use, a doctor's deviation from such recommendations is prima facie evidence of negligence by the doctor if there is competent medical evidence that the patient's injury resulted from the doctor's failure to adhere to the manufacturer's recommendation. Under such circumstances, it then becomes incumbent upon the doctor to justify or excuse his deviation."

The trial court was not asked to, and did not, define the words "prima facie evidence." The specific instruction given to the jury was:

"The instructions issued by the manufacturers for the use of a drug are competent evidence to use in determining whether the appropriate standard of care was followed."

The manufacturer's statement of directions was introduced as an exhibit. It was a comprehensive statement containing a description and chemical-structured configuration, pharmocology, indications and contraindications, warnings, precautions, directions for dosage and administration (which include removal procedures), as well as a statement of "Adverse reactions," which provides:

"Clinical reports indicate that the incidence and the severity of the side effects following Pantopaque myelography with aspiration of the medium are but slightly greater than with ordinary lumbar puncture. In 10–30 percent of such cases there may be transient symptomatic reactions consisting of slight temperature elevation and increase of symptoms referable to a back condition. When the medium is not removed, similar transient side effects occur with a slight elevation of temperature in a greater percent of patients. To reduce the reactions to a minimum, Pantopaque should be removed by aspiration after myelography.

"Occasional severe arachnoiditis occurs producing headache, fever, meningismus, pains in the back and extremeties and elevations in the white blood count and the protein content of the cerebrospinal fluid. The incidence and severity of arachnoiditis are generally increased when active subarachnoid bleeding has been induced by the lumbar puncture.

"Rare instances of the development of lipoid granulomas, obstruction of the ventricular system and venous intravasation producing pulmonary emboli have been reported."

Wasem relies principally upon *Mulder v. Parke Davis & Company*, 288 Minn. 332, 181 N.W.2d 882 (1970), a case in which the trial court directed a verdict for defendant. *Mulder* did not involve jury instructions. The only question in that case was whether there was sufficient evidence to make a prima facie case. Wasem says "the *Mulder* instruction has been approved in the case of *Mueller v. Mueller*, 221 N.W.2d 39 (S.D. 1974)." Although *Mueller* does involve jury instructions, the court in that case omitted the words "prima facie evidence" and substituted therefor the words "evidence of negligence." See also *Lhotka v. Larson*, 238 N.W.2d 870 (Minn.1976). The other cases cited by Wasem, *Nolan v. Dillon*, 261 Md. 516, 276 A.2d 36 (1971), and *Southern Florida Sanitarium & Hospital, Inc. v. Hodge*, 215 So.2d 753 (Fla.App.1968), do not support his position. In *Nolan v. Dillon*, *supra*, at 276 A.2d 48, the court specifically approved an instruction that manufacturer's labeling "is evidence to be considered with all other evidence." *Southern Florida Sanitarium & Hospital, Inc. v. Hodge*, *supra*, did not involve instructions on manufacturer's recommendations.

"Judicial opinions are written to guide the judge as to the law, not to standardize the language to be used in instructions to the jury." *People v. Rutigliano*, 261 N.Y. 103, 184 N.E. 689, 690 (1933).

In North Dakota we have consistently said that "in passing on the correctness of jury instructions given by a trial court, we will consider the instructions which were given as a whole rather than consider individual instructions or portions

of such instructions." *Belinskey v. Hansen*, 261 N.W.2d 390, 396 (N.D.1977). Even when an instruction is insufficient or erroneous standing alone, we would consider the apparent error cured if the instructions as a whole fairly advise the jury as to the law which pertains to the essential issues. See *Leake v. Hagert*, 175 N.W.2d 675 (N.D. 1970); *Thornburg v. Perleberg*, 158 N.W.2d 188 (N.D.1968); *Jasper v. Freitag*, 145 N.W.2d 879 (N.D.1966); *Stokes v. Dailey*, 97 N.W.2d 676 (N.D.1959); *Lund v. Knoff*, 85 N.W.2d 676 (N.D.1957); *Donahue v. Noltimier*, 61 N.D. 735, 240 N.W.2d 862 (1932); and *Axford v. Gaines*, 50 N.D. 341, 195 N.W. 555 (1923). That is not to say that an erroneous instruction cannot be so prejudicial as to require a new trial even though it may be offset by a correct instruction. The case before us is not of that nature.

■■■ Wasem wanted the jury to be instructed that the doctor's deviation from the manufacturer's recommendations constituted "prima facie" evidence of negligence. The trial court instructed that the deviation was evidence of negligence. We agree with a statement made by the Iowa Supreme Court that:

".  .  . these words [prima facie case] .  .  . should not be used unless they are found in the language of an applicable statute." *State v. Kulow*, 255 Iowa 789, 123 N.W.2d 872, 877 (1963).

We also approve, as a general statement:

"The language, form, and style of the instruction in which a court expounds the law are matters addressed to the sound discretion of the court; the instructions may be couched in any language or given in any form or style, so long as they fully and fairly inform the jury of the rules and principles of law applicable to the case and are plain, simple, and easily understood by the jury. The court should avoid the use of technical terms and names that the jury are not supposed to understand. When technical terms are employed, they should be defined." 75 Am.Jur.2d Trial, § 608.

As the Supreme Court of Texas said in *Coward v. Gateway Nat. Bank of Beaumont*, 525 S.W.2d 857, 859 (Tex.1975):

"The term 'prima facie evidence' is ambiguous at best. As Professor Wigmore points out, it is sometimes used 'as equivalent to the notion of a presumption,' i. e. it entitles the proponent to an instructed verdict on the issue in the absence of evidence to the contrary. The term is also used to mean that the proponent has produced sufficient evidence to go to the trier of fact on the issue. [Cites omitted.]"

We defined "prima facie evidence" in *Schnoor v. Meinecke*, 77 N.D. 96, 40 N.W.2d 803, 808 (1950), and, in *Kuntz v. McQuade*, 95 N.W.2d 430 (N.D.1959), we discussed the distinction between permissible inferences and presumptions in applying the doctrine of res ipsa loquitur. See also *Bergley v. Mann's*, 99 N.W.2d 849 (N.D.1959).

■■■ The Wasems do not argue that they were entitled to an instructed verdict. There was "evidence to the contrary" introduced in this case and, accordingly, the labeling of the evidence as "prima facie" would have been improper even if those words had been fully defined. It was not error to refuse to give requested instruction No. 8.

### 2. Inferences of Negligence—Res Ipsa Loquitur.

The Wasems requested and the trial court refused to give the following instructions:

*"Plaintiff's Requested Instruction No. 10*

"Where a patient is injured during the course of medical treatment, the nature of which is such that the consequences are not those which ordinarily result if due care is exercised, and that which caused the injury is in the exclusive control of the doctor, a jury is permitted to infer from the injury itself and the circumstances surrounding it that the doctor failed to exercise that degree of skill and care which it is his duty to apply.

"Before you are permitted to make this inference you must find all of the following:

"1. That plaintiff suffered injuries to his person from the toxic effects of an iodine dye which was not removed from his spinal canal at the conclusion of a myelogram test.

"2. That the retention of all of the dye does not ordinarily occur in the exercise of proper skill and care.

"3. That the removal of the dye was in the exclusive control of Dr. Laskowski.

"4. That the retention of the dye was not due to the conduct of the plaintiff or some third person.

"If you find that plaintiff has established all of the above, you are permitted, but you are not required to draw such an inference."

*"Plaintiff's Requested Instruction No. 11*

"While the medical diagnostic test, a pantopaque myelogram, is considered harmless if properly done and by properly done is meant the removal of the dye at the conclusion of the test, the fact that the patient suffered from an inherent adverse reaction to the dye, none of which had been removed by the doctor who performed the test, permits an inference that such injury ordinarily does not occur if the doctor had exercised the proper care and skill."

The Wasems argue that the trial court erred in not giving one or the other of these requested instructions because, they have concluded, the doctrine of res ipsa loquitur applies to this action.

■ Procedurally, the doctrine of res ipsa loquitur creates a permissible inference from harmful results that the defendant did not exercise the correct standard of care. In an appropriate case, the jury may accept or reject this inference regardless of any explanation offered to rebut it. *Bergley v. Mann's, supra,* 99 N.W.2d at 858. In *Bismarck Baptist Church v. Wiedemann Indus., Inc.,* 201 N.W.2d 434, 440 (N.D.1972), this court said that negligence is never presumed and that res ipsa loquitur does not shift the burden of proof. See also *Whitson v. Hillis,* 55 N.D. 797, 215 N.W. 480 (1927).

■ In *Schoening v. Smith,* 59 N.D. 592, 231 N.W. 278 (1930), we said that the doctrine of res ipsa loquitur does not apply to medical malpractice actions.[1] This holding appears to be grounded in the public policy of encouraging physicians to practice unfettered by financial liability for their services.[2] Although the public has an interest in promoting the practice of medicine, there may be circumstances in a medical malpractice case in which it may be appropriate to instruct the jury that negligence may be inferred from bad results. In *Tvedt v. Haugen,* 70 N.D. 338, 294 N.W. 183, 190 (1940), Justice Morris, in dissenting, said:

"Cases may arise in which the negligence or want of skill of the physician is so plain that it is readily discernible by the layman."

The majority of the court in *Sagmiller v. Carlsen,* 219 N.W.2d 885 (N.D.1974), in setting aside a summary judgment which had dismissed a medical malpractice action because of the failure of the plaintiff to show that she had expert testimony to establish the standard of medical care in the area and the failure of the doctor to meet that standard, said at 893:

"While that doctrine may aid a plaintiff in some medical malpractice cases, and may indeed be used in lieu of expert medical testimony in some such cases, *it applies only where the facts showing negligence are within the understanding of laymen, and the probability of the adverse result from the facts shown within the common knowledge of laymen.* The rule is stated in the decision of U.S. District Judge Davies, construing North Dakota law, in *Swanson v. Hill,* 166 F.Supp. 296 (D.C.N.D.1958):

1. See also *Gallagher v. Kermott,* 56 N.D. 176, 216 N.W. 569 (1927); *Dolan v. O'Rourke,* 56 N.D. 416, 217 N.W. 666 (1928); *McDonnell v. Monteith,* 59 N.D. 750, 231 N.W. 854 (1930); and *Tvedt v. Haugen,* 70 N.D. 338, 294 N.W. 183 (1940). For a discussion of holdings from other states see *Fehrman v. Smirl,* 20 Wis.2d 1, 121 N.W.2d 255 (1963).

2. Crabb, John H., and Johannson, Kenneth F., *Res Ipsa Loquitur in North Dakota,* 38 N.D.L. Rev. 390, 399 (1962).

. 'The only exception to the principle that the doctrine of *res ipsa loquitur* may not be invoked in actions for malpractice, consists of cases where the undesirable result is such that it is evident even to a layman and could not have occurred except for the doctor's negligence, as, for instance, when a foreign object is left in a wound after an operation.' [Quoted from *Johnston v. Rodis*, D.C.1957, 151 F.Supp. 345, 346.]"

[Emphasis added.]

See also *Arneson v. Olson*, 270 N.W.2d 125, 132 (N.D.1978), where this court said that expert testimony is not necessary "to establish a duty, the breach of which is a blunder so egregious that a layman is capable of comprehending its enormity."

■■■ It is obvious that in neither *Tvedt v. Haugen, supra*, nor *Sagmiller v. Carlson, supra*, did this court say in what circumstance a jury should be instructed that it may infer negligence from the bad result. Federal District Judge Davies in *Swanson v. Hill*, 166 F.Supp. 296, 299 (D.C.N.D.1958), cited in *Sagmiller v. Carlson, supra*, said that "the North Dakota Supreme Court circumvented the rule of the *Gallagher* case [see footnote 1], and in so doing, impliedly rejected it." Judge Davies significantly added:

"Moreover, the doctrine of *res ipsa loquitur* is not a rule of pleading, not a substantive rule of law, but a rule of evidence."

Ordinarily, juries should not be instructed on rules of evidence, however it is necessary to instruct the jury as to distinctions between direct and circumstantial evidence. In this case, the jury was instructed that:

"Circumstantial evidence is proof of a chain of circumstances or physical conditions from which the existence or nonexistence of a certain fact in dispute may reasonably be concluded."

It would have been preferable that the court give the pattern jury instruction on circumstantial evidence.[3] Wasem did not,

however, object to that general instruction, and he has not convinced us that an instruction on a specific inference here would be proper.

■■■ Applying the criteria of *Tvedt v. Haugen, supra, Sagmiller v. Carlsen, supra*, and *Swanson v. Hill, supra*, the circumstances of this case make the doctrine of res ipsa loquitur inapplicable. One issue here was whether or not Mr. Wasem's paralysis was the result of the failure to remove the Pantopaque dye from his spinal canal. The evidence on this issue presented a complex medical question—one which would not be within the common knowledge of laymen. Expert testimony was essential to support a factual determination by the jury that the doctor was negligent.

Since 1928 this court has said that a bad result is not always evidence of negligence. See *Dolan v. O'Rourke*, 56 N.D. 416, 217 N.W. 666 (1928), footnote 1. Some of the evidence in this case would support a jury conclusion that Wasem's paralysis would have occurred absent any negligence in the administering of the Pantopaque myelogram. That issue is one of proximate cause. The jury was instructed on proximate cause and there was no objection thereto.

It was not error for the trial court to refuse to give either requested instruction No. 10 or No. 11.

### 3. *Informed Consent.*

Wasem requested, and the court refused to give, the following instruction:

"*Plaintiff's Requested Instruction No. 12*

"A doctor occupies a position of trust and confidence as regards his patient, and it is his duty to act with the utmost good faith. He has an obligation, therefore, to disclose to a patient facts discovered during his course of examination, such as the evidence of some abnormal condition or the creation of a condition that may re-

---

**3.** See Pattern Instruction, NDJI 1009, which provides in part: "Circumstantial evidence consists of facts and circumstances in the case

from which the jury may reasonably infer, from the common experience of mankind, the existence of a fact in dispute."

quire further treatment or which may be a source of further difficulty. If a doctor discovers the patient's condition is not treatable, it is his duty to disclose this situation to the patient."

The trial court gave the following instructions:

### "INFORMED CONSENT

"A doctor must obtain the consent of a patient before treating him or subjecting him to medical tests. The patient's consent, however, to be effective, must be knowledgeable; that is, it must constitute an informed consent. The average patient's ignorance of medical science creates a duty in his doctor to explain the proposed procedure in terms and in a manner that the patient can reasonably comprehend. The doctor must give the patient information as to the nature of the procedure, the purpose it will serve, the alternatives involved, and the dangers and risks of serious complications inherent in the procedure.

"Disclosure to a patient which would be made by doctors of good standing, under same or similar circumstances, are relevant and material to the determination of whether the doctor had fulfilled his duty to disclose.

"The fact that the patient may have signed a consent form is relevant and material to the determination of whether the doctor had fulfilled his duty to disclose but is not binding upon the patient if you find that the patient did not have the information necessary to make such an informed consent.

"A doctor should not be required to give a patient detailed technical, medical explanation that in all probability the patient would not understand, should not be required to discuss risks that are apparent or known to the patient, and should not be required to disclose extremely remote possibilities that at least in some instances might only serve to falsely or detrimentally alarm the particular patient.

"The duty of a doctor to inform the patient is measured by a standard of reasonableness. The doctor must make such disclosures as appear necessary to enable a reasonable person, under the same or similar circumstances confronting the patient at the time of the disclosure to intelligently exercise his right to consent or to refuse the procedure proposed.

"The doctor's failure to adequately inform the patient is malpractice, and subjects him to liability to the patient for all harm if there is a causal relationship between failure to adequately divulge and damage to the plaintiff. A causal relationship exists only when disclosure of significant risks incidental to treatment would have resulted in a decision against it."

In addition, the trial court instructed extensively on *malpractice* and *duty of physician*.[4] We find nothing objectionable in Wasem's requested instruction No. 12; however, as we have previously stated herein, we do not evaluate instructions out of context. The instructions given, as a whole, fairly informed the jury of the law it must apply. The instruction might have been easier to understand if it had said that providing information to a patient is a continuing obligation. We agree with Wasem that he was entitled to have his theory presented to the jury. See *Johanson v. Nash Finch Company*, 216 N.W.2d 271, 274 (N.D.1974). However, a trial court need not give instructions in the specific language requested where the substance thereof is already fully and fairly covered by another charge. *Haugen v. Mid-State Aviation, Inc.*, 144 N.W.2d 692 (N.D.1966). The instructions should fairly cover the claims made by both sides of the case. *Rott v. Provident Life Ins. Co.*, 69 N.D. 335, 286 N.W. 393 (1939). The instruction given in this case was adequate. It is not the function of the court to explain the thought processes of a jury. *Regan Farmers Union Co-op. v. Swenson*, 253 N.W.2d 327 (N.D.1977). It was not error to refuse to give requested instruction No. 12.

---

4. See NDJI 410, 411, 412 and 413 for pattern instructions on this subject.

#### 4. *Motion for New Trial.*

A motion for a new trial is directed largely to the sound judicial discretion of the trial court. Before this court will overturn a trial court denial of a motion for new trial, it must be clear that there was an abuse of discretion. *Vasichek v. Thorsen*, 271 N.W.2d 555 (N.D.1978); *Demaray v. Ridl*, 249 N.W.2d 219 (N.D.1976). Wasem's argument is based entirely upon his own conclusion that there was error in the instructions. Having found no error in the instructions given, we find no basis for a conclusion that there was an abuse of discretion in denying the motion for new trial.

"A case once tried and concluded by a verdict should not be reopened and retried unless a careful examination of the record discloses that justice so requires." *Benzmiller v. Swanson*, 117 N.W.2d 281, 282 (N.D.1962), syllabus 4.

We are not convinced that justice requires a new trial. The judgment of dismissal and the order denying a new trial are affirmed.

VANDE WALLE and SAND, JJ., and KIRK SMITH, District Judge, concur.

KIRK SMITH, District Judge, and EUGENE A. BURDICK, Supreme Court Commissioner, sitting in place of ERICKSTAD, C. J., and PAULSON, J., disqualified.

EUGENE A. BURDICK, Supreme Court Commissioner, concurring specially.

In addition to the reasons assigned by Justice Pederson for holding that it was not error to refuse to give Plaintiff's Requested Instruction No. 10 concerning res ipsa loquitur, I shall add another.

Strictly speaking, the doctrine of res ipsa loquitur is a "rule" of evidence the *judge* applies, where there is a motion for a directed verdict, in determining whether or not the claimant has proved a prima facie case against the defendant. In applying the rule as developed under the criteria of the cases, the judge merely determines whether or not the jury *could* draw the requisite inference of negligence in a case lacking direct evidence of negligence. This does not mean, however, that the jury should be instructed on the doctrine at all.

In discussing the evolution of this rule, Professor William L. Prosser observed that: "A small minority of the courts, however, uniformly give res ipsa loquitur a greater effect than that of a mere permissible inference from the evidence. . . . Actually this enlarged procedural effect of res ipsa loquitur is fast disappearing from the courts, as recent decisions in many jurisdictions have swung over to the view that there is as a general rule no more than a permissible inference which merely gets the plaintiff to the jury. There was at one time considerable support for the position that where the action is by a passenger against his carrier, res ipsa loquitur is given increased procedural effect, in the form of a presumption, or even a shifted burden of proof; but except in Alabama and Oklahoma there appears to have been a retreat from this distinction. There may perhaps be other such relations, such as that of physician and patient, where special conclusions are called for. Apart from such instances, however, remarkably few jurisdictions now treat res ipsa loquitur as anything more than a simple matter of circumstantial evidence." Prosser, Torts, Sec. 40, p. 234 et seq. (3d ed. 1964).

The Washington supreme court appears to be a forerunner among courts in putting res ipsa loquitur in proper perspective.

In *Chase v. Beard*, 346 P.2d 315 (Wash. 1960) the court discusses the origin and purpose of the rule and concludes, as do I, that "its primary purpose is to withstand the challenge of the defendant's motion for a nonsuit." The Court concluded by saying "There was no necessity for any instruction."

This view was followed by the Washington court in *Ball v. Mudge*, 391 P.2d 201 (Wash.1964) and in *Zukowsky v. Brown*, 488 P.2d 269 (Wash.1971). In the latter case, the Washington court, at page 279, refines the application of the rule as follows:

"Res ipsa is properly treated the same as other circumstantial evidence in instructions to the jury. The remaining

question is whether, instead of or in addition to these instructions, the so-called 'res ipsa instruction' should be given. We are of the opinion that such instructions should not be given. To do so is to emphasize one particular inference over others which may be, and usually are, in the case. When added to other, general instructions which inform the jury of what they may or should do with the evidence before them, such particularized instructions are unnecessary and redundant. We agree with the statement that 'in keeping with the modern thinking on the subject, giving slanted or formula instructions should be avoided wherever possible. They should be given only where a general instruction would clearly be inadequate or would confuse or mislead the jury'."

Accordingly, I would limit the holding of *Bergley v. Mann's*, 99 N.W.2d 849 (N.D. 1959) to the facts of that case—that the instruction given by the trial court with respect to res ipsa loquitur was an erroneous and prejudicial statement of the law. An adequate instruction on circumstantial evidence is all that is needed or is proper.

SAND, J., and SMITH, District Judge, concur.