373 So.2d 66 (1979)
Ofelia GUZMAN and Thomas Guzman, Her Husband, Appellants,
v.
Anthony R. FARALDO, M.D., et al., Appellees.
No. 78-1589.
District Court of Appeal of Florida, Third District.
July 3, 1979.
Rehearing Denied August 8, 1979.
*67 Robert F. Weiner, Miami, for appellants.
Fowler, White, Burnett, Hurley, Banick & Knight and Henry Burnett, Miami, for appellees.
Before PEARSON and KEHOE, JJ., and EZELL, BOYCE F., Jr., (Ret.), Associate Judge.
PEARSON, Judge.
The plaintiffs, Ofelia Guzman and her husband, Thomas Guzman, appeal from a final judgment on a directed verdict for defendants Anthony R. Faraldo, M.D., and Metropolitan Dade, d/b/a Jackson Memorial Hospital. The action was for alleged medical malpractice. Defendant Faraldo was the surgeon who performed an operation on Mrs. Guzman involving open-heart surgery; defendant Jackson Memorial Hospital furnished the operating room and the anesthesiologists. The directed verdict was entered at the close of the plaintiffs' case.
The controlling question, as developed by the briefs and the argument before this court, is whether the evidence presented, when viewed in the light most favorable to the plaintiffs and with all reasonable inferences therefrom, is sufficient to show a prima facie case. See John B. Reid & Associates, Inc. v. Jimenez, 181 So.2d 575 (Fla. 3d DCA 1965). The single element that the defendants urge was not shown is that the injury was proximately caused by any act or omission on their part, which was shown to be a departure from the standard of reasonable care.
The evidence presented showed that Mrs. Guzman suffered an injury to her eleventh cranial nerve. This nerve starts at the base of the skull and runs under a neck muscle and extends into the shoulder area supplying the trapezius and sternocleidomastoid muscles. The disability complained of after the operation was that Mrs. Guzman did not have full control of her neck muscles. As a result, her head was pulled to one side. She could not voluntarily correct this condition.
There is no evidence that the nerve was damaged by the surgery as distinguished from the operational procedure. The plaintiffs seek to infer that the condition, which was first noted two or three days after surgery, occurred during, and resulted from, the operational procedure. The particular cause urged by the plaintiffs is that the nerve was damaged by the prolonged position of plaintiff's head during the operation. There was testimony that when a patient is unconscious and paralyzed, while under general anesthesia, the patient's muscles are most susceptible to injury. This fact requires that particular attention be paid to the positioning of the patient's body to insure that it is free from pressure placed on vulnerable areas in order to prevent nerve damage. During the lengthy surgical procedure, the patient is required to have a tube inserted in her throat. The plaintiffs called defendant Faraldo, who testified that one of the things an anesthesiologist is supposed to *68 watch for is prolonged pressure on a nerve during the operation. The doctor further testified that if the anesthesiologist was not aware of the improper position of the patient's head or neck during a six hour operation when the patient is under general anesthesia, the improper positioning of the head or neck could cause damage to the eleventh cranial nerve. In addition, the plaintiffs presented testimony that defendant Faraldo, the chief surgeon, did not see the positioning of the plaintiff's head or neck during the surgical procedure. The same was true of the assistant surgeon, Dr. Young. The resident anesthesiologist, Dr. Baird, who intubated the plaintiff and who was present during the procedure, is deceased. The attending anesthesiologist, Dr. Salami, had no recollection of the procedure performed. The attending surgeon, Dr. Vargas, was unable to testify on the positioning of the plaintiff's head or neck. The plaintiffs infer from this evidence that there was a breach of the required standard of reasonable care in that not one person observed or was able to testify that the intubation of the plaintiff was proper.
The expert medical testimony presented was to the effect that an injury to the eleventh cranial nerve during this operational procedure has never been seen nor even been recorded in medical literature. Further, the expert medical testimony was to the effect that an injury to the eleventh cranial nerve can occur in an "infinitesimal" number of ways including degenerative diseases, inflammation of the nerve, pressure from neoplasms, tumors, emboli, enlarged masses of boils or lymph nodes. One other factor which militates against the plaintiffs' inferences that the injury occurred on the operating table is that the plaintiff herself originally attributed the injury to a prior automobile accident.
Under these circumstances, where the evidence fails to show a causal connection between the injury complained of and the breach of the standard of reasonable care, the trial court properly directed a verdict for the defendants.
Plaintiffs' alternate argument that the cause should have been submitted to the jury on the theory of res ipsa loquitur is without merit. The doctrine is clearly not applicable to the defendant doctor because it is affirmatively shown that he did not have the plaintiff's positioning under his control. The doctrine has been approved for submission to the jury of a medical malpractice claim against a hospital where it is shown that the process which caused the injury was under the control of the hospital through its employees. See Southern Florida Sanitarium and Hospital, Inc. v. Hodge, 215 So.2d 753 (Fla. 3d DCA 1968), and cases cited therein. The doctrine is not applicable here because the plaintiff failed to present more than a possibility that the injury was caused by the operational procedure. The instrumentality of the injury must first be established in order for the control of that instrumentality to serve a basis for the submission of a cause of action on the theory that the defendant, being in full control of that instrumentality, must have caused the injury. Cf. Schott v. Pancoast Properties, 57 So.2d 431 (Fla. 1952).
Affirmed.
KEHOE, J., dissents.